## MARTIN v. CENTRAL IOWA RAILWAY CO.

1. **Railroads:** NOTICE OF DAMAGE TO STOCK: MISNOMER OF DEFENDANT. Where horses were killed by the *Central Iowa Railway Company*, and the owner of the horses caused to be served on a proper officer of that company a notice of the injury, as contemplated by section 1289 of the Code, which notice was, however, addressed to the *Iowa Central Railway Company*, *held*, in an action for double damages, that the misnomer did not invalidate the notice, under the rule that "the omission, alteration or transposition of any of the words, if the words in the name used are synonymous with the true name of the corporation, is not a misnomer that will defeat the notice." ADAMS, J. *dissenting*.

2. **Evidence:** RELEVANCY. The pleadings in a former action against defendant *held* properly admitted in evidence as showing that defendant became the owner of the railway before the killing of plaintiff's horses—that being a point in issue.

3. **Instruction:** NOTICE OF DAMAGE.' An instruction to the effect that the notice (referred to in the first point, *ante*), was good, if plaintiff intended to serve it upon the defendant and the misnomer was a mistake, but that, if plaintiff intended to serve it on some other company, defendant was not liable for double damages, *held* correct.

4. **Verdict:** SPECIAL INTERROGATORIES: MODE OF ANSWER. Where special interrogatories were submitted to the jury and the court directed the jury that, if they could not answer the questions by "yes" or "no," they might answer them in some other manner, and the jury answered "we think" and "have reason to believe," *held* that these answers presented in positive language the conclusions reached by the jury, and sufficiently expressed the findings of fact sought by the questions.

5. **Practice in the Supreme Court:** VERDICT: EVIDENCE TO SUPPORT. The evidence in this case being considered and found to be conflicting, this court will not interfere with the judgment rendered on the verdict.

*Appeal from Monroe District Court.*

WEDNESDAY, OCTOBER 4.

ACTION to recover double the value of certain horses killed and injured by a train upon the road of defendant at a point where it had a right to construct fences. There was a verdict and a judgment for plaintiff; defendant appeals.

*Perry* and *Townsend*, for appellant.

*H. A. Dashiel*, for appellee.

BECK, J.—The facts, as far as they are necessary to a proper understanding of the case, will be stated in connection with the discussion of the several questions we are required to pass upon.

I. The notice showing the injury to the horses, required by the statute as the foundation of the claim for double the

1. RAILROADS: notice of damage to stock: misnomer.

value of the property, was addressed to the "Iowa Central Railway Co." Defendant objected to its admission in evidence on the ground that it was not addressed to defendant by its proper style, its corporate name being "The Central Iowa Railway Co." The notice was admitted in evidence.

Counsel for defendant insist that, as the notice was not ad-

dressed to defendant by its proper style, it does not comply with the requirement of the statute. Code, § 1289. There is no question but this notice was served upon a proper officer of defendant. We are required to determine whether the misnomer of the defendant, occurring in the address of the notice, will justify defendant in claiming that the notice required by the statute was not given. We may concede that the notice should be addressed to the railroad corporation, a matter of doubt which we do not decide. Does the misnomer invalidate the notice? We think not. The name of defendant consists of a number of words. The omission, alteration or transposition of any of the words, if the words in the name used are synonymous with the true name of the corporation, is not a misnomer that will defeat the notice. See Angell and Ames on Corporations, 9th Ed., Sec. 99 and notes. It cannot be doubted that the name "Iowa Central Railroad Co.," the name used in the notice, is synonymous with the true name of the corporation, viz., "The Central Iowa Railway Co." We conclude that the court did not err in admitting the notice in evidence.

II. The plaintiff was permitted to introduce in evidence the pleadings in a case brought by the Hawkeye Telegraph Company against the defendant, which shows that defendant, prior to the injury to plaintiff's horses, acquired the railroad by purchase, under the foreclosure of a mortgage executed by the Central Railroad Company of Iowa. Counsel for defendant insist that this evidence is "irrelevant, immaterial and incompetent."

2. EVIDENCE: relevancy.

We confess that the materiality of the evidence is not made plain, except so far as it tended to show that defendant had acquired the road before the plaintiff's horses were injured. Without inquiring into the materiality and relevancy of the evidence as to other matters, we reach the conclusion that it was relevant and competent upon this point which was put in issue by the pleadings.

III. Counsel for defendant insist that the eleventh instruction given to the jury is erroneous, in that it directs the jury to determine the sufficiency of the notice considered in the first point of this opinion. We think the instruction does not have the effect to leave to the jury the sufficiency of the notice. It holds the notice good, if plaintiff intended to serve it upon defendant and the misnomer was a mistake, but if plaintiff intended it for some other company, defendant is not liable for double damages. The instruction in holding the notice to be sufficient, unless it was not intended to be served upon defendant, is correct.

*3. INSTRUCTION: notice of damage.*

IV. The horses of plaintiff were injured during the night of December 26, 1879, and the circumstances showed that the train which inflicted the injuries was running south. A witness testified that a train on the road did run south that night. Defendant introduced its employes having control of the running of trains, who testified that but one train, "No. 6," ran south on the road that day. At defendant's request the following special interrogatories were submitted to the jury:

*4. VERDICT: special interrogatories: mode of answer.*

"1. Did the defendant run any trains after night, south of Eddyville, after No. 6 went south from said town, in the afternoon of the 26th of December, 1879?

"2. Were plaintiff's horses struck by train No. 6 going south from Eddyville on the day last aforesaid."

The record shows that the court directed the jury, "if they could not answer the questions by answers 'yes' and 'no,' that they might answer them in some other manner."

The jury in their answer say that they "think" and "have reason to believe" that there was another train besides No. 6, and that they "think" the horses were not struck by No. 6. The answers present in positive language the conclusions reached by the jury. The word "think" means "to believe," to consider, to esteem; it sufficiently expressed the findings of the facts sought by the questions.

V. Counsel for defendant insist that the evidence does not support the verdict, in that defendant's employes testified that

5. PRACTICE in the supreme court: ver- dict: evidence to support.

no train other than No. 6 ran south on the day of the accident. Their testimony is based upon records of the running of trains kept by them, and not upon their independent memories. The record shows that no train ran south on the night of the 27th of December. On the other hand, a witness testifies that she heard and saw a train running south on the night of the 26th of December. She is positive of the date, and associates it in her mind with the facts that she saw the horses on Christmas day, heard of the injury to them the morning after it occured, and saw them again two days after they were injured. Counsel for defendant insist that this witness was mistaken as to the night she saw the train. It may be replied that defendant's employes may have, through mistake, entered the date of the train running south on the 27th instead of the 26th. Such mistakes in dates are not uncommon. It is quite true that the witnesses on either side of the case may have been mistaken as to the date. But plaintiff's witness is supported by the circumstances showing the cause and place of injury. It clearly appears that the horses were upon, and were thrown or fell from, a bridge, fifteen feet high and sixty feet long. Tracks of the horses appeared on the railroad near the bridge, and blood and hair of the color of the horses, were found for half the distance across the bridge upon the ties, tending to show that the animals had been there dragged along. That the horses were upon the bridge and dragged along by some power, is plain. The jury, understanding the habits and instincts of the horses, were authorized to conclude that they did not go voluntarily upon the bridge, and that it would require a score or more of men to drive them upon it, if the thing, indeed, be possible. Then the appearance of the bridge, showing that the horses were dragged over it, indicated they were injured by no other means than the train. The time of the injury was without doubt at night. The jury could

come to no other conclusion than that a train passed the bridge going south, regardless of the condition of the record of the running of the trains, as shown by the testimony of defendant's employes.

While it may be conceded the evidence is conflicting, it surely cannot be claimed that there was such an absence of proof as would justify us in reversing the judgment. Indeed, some of us think, that the strong preponderance of the evidence is on the side of plaintiff. We have considered all questions discussed by counsel, and reach the conclusion that the judgment of the District Court ought to be

AFFIRMED.

ADAMS, J., dissents to the first point of this opinion.