WORDEN v. THE HUMESTON & SHENANDOAH RAILWAY COMPANY.

1. **Railroads:** DEATH OF ENGINEER BY DERAILMENT: EVIDENCE OF NEGLIGENCE. In an action for the death of one of defendant's locomotive engineers, caused by the derailment of his engine, there was evidence tending to show that at the place of the accident there was a depression in the track, which caused such a rocking and swaying of trains passing over it as to attract the attention of and alarm persons on the trains ; that the defect had existed for three days at least ; and that a conductor had called the attention of the section-boss to it. *Held* that it could not be said that a verdict against defendant was without support on the ground that there was no evidence of defendant's negligence.

2. ——— : ——— : EVIDENCE AS TO TOPOGRAPHY. In such case, where defendant claimed that the derailment was caused by the criminal act of some unknown person, it was proper to allow plaintiff to prove the topography of the country, in order to show the improbability of defendant's claim.

3. ——— : ——— : EVIDENCE: HARMLESS ERROR. In such case, if it was not competent to show that the defendant's manager was first on the ground after the accident, it was not prejudicial on the ground that it might be argued therefrom that evidence was prepared under his direction.

4. ——— : ——— : ——— : APPEARANCE OF SPLICE-BAR. In such case, it being a question whether a certain splice-bar was the one originally used at the place of the accident, it was competent to admit testimony as to its appearance and condition.

5. **Evidence :** CROSS-EXAMINATION : POINT BEFORE STATED. Where a matter has been directly and positively stated in the examination in chief, it is not error to rule out questions on cross-examination calling only for a re-statement of the same matter.

6. **Railroads :** DEFECT IN TRACK : LOCATION : EVIDENCE. In an action for the death of an engineer through a defect in the track, it was proper to permit a witness to testify as to a defect which he located *about* the place of the accident, though he was not able to locate it at that place precisely.

7. **Evidence :** CARLISLE LIFE-TABLES : ENCYCLOPEDIA BRITANNICA. In estimating the measure of damages for the death of a person, the Carlisle life-tables, showing the expectancy of the decedent's life are competent evidence, and the Encyclopedia Britannica, being a familiar work of science of unquestioned authority, may be introduced to show such tables.

8. **Instructions :** AS TO THEORY BEST SUPPORTED BY EVIDENCE. The court instructed the jury that they should determine which of the theories of the case was best supported by the evidence. *Held* not objectionable as a direction to find for the party whose theory had the most support,—the jury having been, in other instructions, directed as to the grounds on which their verdict should be based.

*Appeal from Page District Court.*—HON. C. F. LOOFBOUROW, Judge.

FILED, DECEMBER 21, 1888.

ACTION to recover for personal injuries sustained by plaintiff's intestate while employed by defendant as an engineer, which resulted in his death, and were occasioned by defendant's negligence. There was a judgment on a verdict for plaintiff. Defendant appeals.

*W. W Morsman*, for appellant.

*James McCabe* and *Burke & Prout*, for appellee.

BECK, J.—I. The point most elaborated by plaintiff's counsel is that the verdict fails of support in the evidence. The accident in which the intestate was injured was the derailment of the engine upon which he was employed. There was evidence tending to show that the

4. RAILROADS: death of engineer by derailment: evidence of negligence.

accident was caused by a defect in the track,—a depression which caused such rocking and swaying of a train passing over it as to attract the attention of and alarm persons riding on the train. This defect had existed for three days, at least, before the accident, and had attracted the attention of a conductor, who had communicated the fact as to the condition of the track to the section-boss. The defect had attracted the attention of others. Without referring to other evidence, we are justified in holding that upon this evidence there was no absence of proof that the injury resulted from the negligence of defendant in permitting the defect to continue after it was known to the employes in charge of the track and operating the railroad. Surely, the defendant ought to be so diligent and watchful through its employes that defects endangering the lives of passengers and employes ought to be observed, noted and reported, so that they may be speedily removed. Any delay in reporting or removing defects which would permit the danger to continue after the repairs could have been made in the exercise of due diligence would be negligence. We think there is no ground for holding that the verdict is not supported by the evidence.

II. A witness, against defendant's objection, was permitted to describe the topography of the country about the place of the accident. Counsel 2. ——:——: evidence as to for defendant claims that the purpose of the topography. evidence was to show the improbability of the defects in the track being caused by a criminal act, inasmuch as the place was so plainly exposed to view. It appears that defendant claims that the defect was caused by the criminal act of some unknown person. It is surely competent to contradict by evidence any inference in that direction. We think the evidence objected to tends to raise an inference that the defect was not caused by a criminal act.

III. The defendant objected to evidence showing that a relief train from Clarinda arrived at the place of

**3. ——: ——: evidence: harmless error.** the accident before a like train from Shenandoah. Counsel for defendant claim that the evidence was intended to show that the manager of the road was first on the ground, from which it would be argued that under his direction preparation of evidence was made. Surely, if it was not competent to show that the manager was first on the ground, it is plain that no prejudice resulted from the admission of the evidence. If the ruling be erroneous, we cannot reverse the judgment on that ground.

IV. A witness was permitted to testify as to the condition and appearance of a splice-bar found at the **4. ——: ——: ——: appearance of splice-bar.** place of the accident. It is claimed that the evidence was intended to support an argument that the splice-bar had been substituted for the one originally used. The condition and appearance of the splice-bar would certainly tend to show the length of time it had been in use, and other facts which would support an inference as to whether it had really been used at the place. The evidence was not incompetent.

V. The coroner holding the inquest on the deceased was asked, upon cross-examination, if the jury rendered **5. EVIDENCE: cross-examination: point before stated.** a verdict under his supervision to the effect that the accident occurred through the felonious act of some unknown person. An objection to the question made by plaintiff was sustained. It is not claimed that the question was asked to prove the character of the verdict, but to show that it was rendered under the supervision of the witness. This fact had been directly and positively stated in the examination in chief. It had therefore been shown, and it was no error to forbid the repetition of the proof on the point.

VI. A witness testified to a defect in the track. The defendant moved to exclude his evidence for the **6. RAILROADS: defect in track: location: evidence.** reason that it did not show the defect to be at the precise place of the accident. But it did locate the defect about the place of the accident. The witness was unable to give

Worden v. The Humeston & S. Ry. Co.

the precise place. The court rightly permitted the evidence to go to the jury, who were authorized to consider its effect.

VII. The plaintiff offered the Carlisle life-tables to show the decedent's expectation of life. The tables were found in the "Encyclopedia Britannica," which was admitted in evidence, against defendant's objection. The Carlisle tables were prepared to show the expectation of life of persons of various ages, and are based upon statistics gathered from observation. They are of received authority, and are found in works of science and art. We are not aware that there are any separate publications containing these tables and nothing else. The "Encyclopedia Britannica" is a familiar work of science and art ,of unquestioned authority. It was therefore rightly received in evidence, under Code, section 3653, to show the Carlisle tables, which are found in books of the character of the encyclopedia. Quite a a number of other objections to evidence, based upon alleged incompetency, were overruled,—we think rightly, in each case. The objections are not of sufficient importance to demand separate discussion.

*7. Evidence: Carlisle life-tables : Encyclopedia Britannica.*

VIII. The court, in an instruction, directed the jury that they should determine which theory as to the cause of the accident ( plaintiff's or defendant's) had most support in the evidence. Counsel for defendant object to the instruction, on the ground that it directs the jury to find for the party whose theory has the most support. But it has no such effect. The jury were directed in other instructions as to the grounds upon which their verdict should be based. Other instructions are objected to on the ground that there is no evidence to which they are applicable. We think differently, and regard the instructions as correct. The judgment of the district court is

*8. Instructions: as to theory best supported by evidence.*

AFFIRMED.