LENA SCAGEL, Administratrix, Appellee, v. CHICAGO, MILWAUKEE & ST. PAUL RAILWAY COMPANY, Appellant.

1. **Railroads**: NEGLIGENCE: PERSONAL INJURY: EVIDENCE: OPINIONS. In an action against a railroad company to recover damages for the death of one of the defendant's engineers, caused by the derailment of the train upon which such engineer was employed, it appeared that the ice in a stream crossed by defendant's road, and at the point where the accident occurred, had so lodged against the bridge crossing said stream, and against and upon the approach thereto, as that when struck by the engine the rails on the approach on one side were loosened for some distance, and the engine and cars were derailed. *Held*, that the question, put to a witness who visited the place four or five hours after the accident occurred, whether any ice that was there appeared to have been struck by the engine, was not objectionable as calling for an opinion.

2. ——: ——: ——: ——. A witness having testified as to the relative height of the defendant's track at the place of the accident, and on the main bridge, *held*, that for the purpose of showing what the grade was at the time of the accident, and the judgment and recollection of the witness concerning it, he was properly permitted to testify that since the accident the grade of the defendant's road at that point had been raised about one foot.

3. ——: ——: ——: ——: LIFE TABLES. Johnson's New Universal Encyclopedia, being a standard work upon matters of science and art, is competent as evidence of the Northampton and American life tables, for the purpose of showing the expectation of life of an individual.

4. ——: ——: ——: SPECIAL FINDINGS. A party is not entitled upon the trial of a cause, to have interrogatories submitted to the jury for its special findings as to facts that are immaterial, nor upon every circumstance which may have some bearing on his case, and the refusal of the court to submit an interrogatory, the answer to which could not have controlled the general verdict, is not a reversible error.

5. ——: ——: ——: ——: EVIDENCE. There being evidence tending to show that a large part of the railroad ties at the place of the accident were of soft wood, and broken off at the south rail of the defendant's road, and that the ends of others were "combed out" by the spikes which were forced through them by lateral pressure, *held*, that the jury was warranted in finding that the train was *supposed* to have been derailed by coming in contact with ice, and the giving away of the ties, and that the use of the word supposed was not objectionable.

6. ——: ——: ——: ——. It appearing that when the defendant's section foreman examined the bridges a few hours before the accident the river was then rising rapidly, that the stream was accustomed to rise rapidly, and had been as high several times before since the defendant's railway had been constructed, and that twelve or fifteen years before the track at the same point had been washed out, *held*, that the finding of the jury that the defendant was guilty of the want of ordinary care in patrolling its track was supported by the evidence.

7. ——: ——: ——: ——. A rule of the defendant company required its engineers, during heavy rainstorms, or immediately thereafter, to run its trains "very cautiously," and one of the questions submitted to the jury for their special finding was, whether the deceased was running the engine "very cautiously" at the time it came in contact with the ice. *Held*, that it appearing from the evidence that the rain had ceased several hours before the deceased reached the place of the accident, the interrogatory related to an immaterial fact; but that, conceding that the rule was applicable to the case, the same called for the exercise only of reasonable care under the circumstances referred to therein, and the answer of the jury that the deceased was running "reasonably precautious," was sufficiently definite as to its meaning, and was not irresponsive to the question as referring to a different degree of care from that called for by the above rule.

8. ——: ——: ——: VERDICT: EVIDENCE. The evidence tended to show a faulty construction of the defendant's roadbed at the place

of the accident, that many of the ties were in bad condition, and not suitable for use, and that the provision for the passage of water under the bridge was insufficient; that the deceased had not been informed of anything that required unusual care at the place of the accident, though he had been warned to guard against danger at two other places; that he seemed to have managed his engine with reasonable care; that before the place of the accident was reached the deceased had applied the airbrakes, but had released them when the level track, within a short distance of the bridge, was reached; that he was in his proper place, looking ahead, when the accident occurred, but a fog prevented him from seeing the ice on the track until too late to check the train, and avoid the collision in which he was killed. *Held*, that the jury were justified in returning a verdict against the defendant for damages for the death of the engineer.

*Appeal from Cerro Gordo District Court.*—Hon. J. C. Sherwin, Judge.

Monday, October 12, 1891.

Action to recover damages alleged to have resulted from the negligence of the defendant in causing the death of the plaintiff's intestate. There was a trial by jury, resulting in a verdict and judgment in favor of the plaintiff for sixty-five hundred dollars. The defendant appeals.—*Affirmed.*

*Geo. E. Clarke*, for appellant.

*Stanberry & Clark* and *John Cliggit*, for appellee.

Robinson, J.—In April, 1888, James W. Scagel was in the employment of the defendant as engineer of a passenger locomotive. His run was from Mason City to McGregor and back. He left McGregor with his engine and train a few minutes before midnight on the fourth day of the month named. It had been raining hard, and he was warned to run slowly over all bad places in the road, without regard to making time. His attention was called especially to a place east of and near Ft. Atkinson, and to another called "Plum

Creek," two or three miles west of Lawler.   The train
passed these places safely, but when it approached the
·crossing  of  a  stream  called the ·"Middle" or "Little"
Wapsie the engine came in contact with ice which had
floated or been forced onto the rails, and was thrown
from the track, several cars were derailed, Scagel and
others were killed, and several were injured.

The plaintiff alleges that the accident was caused
by the negligence of the defendant in not constructing
its railway and appurtenances properly, in not keeping
them in repair, and in not having the place where the
accident occurred watched, and the employes in charge
of the train which was wrecked notified of its condition.
The defendant denies the alleged negligence, avers that
the decedent contributed to the cause of his death by
his own carelessness, and that he knew of the alleged
defects in its railway.

There is some conflict in the evidence, but it tends
to show facts substantially as follows:   The ground on
the east side of the Middle Wapsie or Wapsie, as it is
commonly called in the record, is low, and the defend-
ant's track is carried across it on embankments and
trestlework.   Near the eastern side of the bottom land
is a trestlework called the "Dry" or "East" bridge.
It was about five feet above the surface of the ground,
and had a clear opening for the passage of water a little
more than forty feet in width.   That bridge had at one
time been much longer, but in the year 1887 a portion
of it was filled with an embankment of earth.   From
that bridge westward towards the stream an embankment
extended for a distance of eight hundred and forty-four
feet.   At the west end of that embankment was the
bridge over the Wapsie, which was one hundred and
seventy-four feet in length, with an opening under it
for the passage of water, one hundred and sixty-three
feet wide.   The west bridge was several feet higher
·than the east one.   The accident occurred two hundred

and twenty feet west of the Dry bridge. The lowest part of the railway track in the vicinity of the river extended from the place of the accident eastward a distance of four or five hundred feet. A short distance north of the track, on the east side of the river, was a pond. At the time of the accident the water had overflowed the banks of the Wapsie, and had raised nearly to the top of the embankment we have described. Ice was floating down from above, and some of it had lodged at the Dry bridge. The flow of the water was so far checked by the bridges, the ice and the embankment that it was several feet higher on the north side of the track than it was on the other. A pear-shaped cake of ice, about two hundred and twenty-five feet long, and about one hundred and seventy-five feet wide at the widest place, and fifteen inches thick, had floated from the north, presumably from the pond mentioned, and the narrow end, which was twelve feet wide, had lodged against the embankment, if it was not actually on the rails. The engine struck some ice, but whether the large cake or smaller pieces is a matter of dispute. The south rails were loosened for some distance, and the engine and the cars which were derailed went off on the south side. Many of the ties at the place of the accident were of soft wood, others were decayed, and in such ties the spikes would not hold.

I. A witness who reached the place of the accident four or five hours after it occurred testified that

**1. RAILROAD: negligence: personal injury: evidence: opinions.** there were several pieces of ice on the track, and stated, in regard to the cake of ice described, that it lay about a foot from the end of the ties, and that, so far as he was aware, there was no indication that the ice, which was next to the track, had been struck or crushed, or shoved back from the track by the engine or cars. He was then asked. "Did any ice that was there appear to have been struck?" The defendant objected to the

question, on the ground that it was incompetent, imma-
terial, and called for the opinion and conclusion of the
witness.   The objection was overruled, and the witness
answered:   "Only the ice that was on the track under
the car; that I spoke of before."   The appellant insists
that the question called for the opinion of the witness
on a material question in the case, i. e., whether the
train struck the large cake or smaller pieces which the
large one had, perhaps, pushed up onto the track, and
that it was not one requiring the testimony of an expert.
The information called for by the question was in the
nature of a fact of which anyone of ordinary observa-
tion who had noticed the condition of the ice was
competent to speak, and the answer was, therefore,
competent.   *Kelleher v. City of Keokuk*, 60 Iowa, 474;
*Winter v. Central Iowa Ry. Co.*, 80 Iowa, 443, 446.

II.   A witness stated that since the accident the
grade of the defendant's road had been raised about
2. —: —: —: one foot at the place where the accident
—. occurred.   The defendant objected to the
evidence, and moved to exclude it.   The motion was
denied on the statement of the plaintiff that she desired
it to remain only for the purpose of showing what the
grade was at the time of the accident, and the judg-
ment and recollection of the witness concerning it.   He
had testified in regard to the relative height of the track
at the place of the accident, and on the main bridge,
and we think the question may have been proper for
the purpose for which it was retained.   Another witness
was asked in regard to the raising of the track, but
gave no definite answer to the question, and what he
said could not have been prejudicial.

III.   The plaintiff offered in evidence the North-
ampton and American life tables as shown by volume 3,
3. —: —: —: of Johnson's New Universal Encyclopedia.
—: life
tables.   The defendant objected, on the ground

that it was "incompetent and immaterial," stating that
it "knew nothing about the book." The objection was
overruled, and the book was admitted in evidence. It
is a standard and well-known work, which treats of
science and art, as well as other matters, and, under
the rule adopted in *Worden v. H. & S. Ry. Co.*, 76 Iowa,
310, 314, and *Haden v. Sioux City & P. Ry. Co.*, 48 N.
W. Rep. (Iowa) 733, was admissible. See, also, *Sellars
v. Foster*, 42 N. W. Rep. (Neb.) 908; *Cooper v. Lake
Shore & M. S. Ry. Co.*, 66 Mich. 261; 33 N. W. Rep.
306. Other questions in regard to the admission of
evidence are presented, but we find no error prejudicial
to the defendant in any of the rulings of which com-
plaint is made.

IV. When the evidence had been fully introduced,
the defendant asked the court to submit to the jury
fifteen special interrogatories, of which the
court refused to submit those numbered 4,
11, 12 and 13. Of that ruling the appel-
lant complains. Section 2808 of the Code is as follows:
"Sec. 2808. In all actions, the jury, in their discretion,
may render a general or special verdict, and, in any
case in which they render a general verdict, they may
be required by the court, and must be so required on
the request of any party to the action, to find specially
upon any particular questions of fact to be stated to
them in writing, which questions of fact shall be sub-
mitted to the attorneys of the adverse party before the
argument to the jury is commenced." Neither party
to an action has a right to insist that all the special
interrogatories he may present to the court shall be
submitted to the jury. Such interrogatories should be
clear and distinct, and capable of being answered briefly.
*Marshall v. Blackshire*, 44 Iowa, 476. An interroga-
tory which refers only to an immaterial fact should not
be submitted. *Bonham v. Iowa Central Ins. Co.*, 25
Iowa, 335; *Liston v. Central Iowa Ry. Co.*, 70 Iowa,

4. ——: ——: ——: special find-ing.

716; *Lawson v. Chicago, R. I. & P. Ry. Co.*, 57 Iowa, 674; *Mickey v. Burlington Ins. Co.*, 35 Iowa, 183. The refusal of the trial court to submit a special interrogatory, the answer to which could not have controlled the general verdict is not reversible error. *Dreher v. I. S. W. Ry. Co.*, 59 Iowa, 601. A party is not entitled to a special finding upon every circumstance which may have some bearing on the case. *Hawley v. Chicago, B. & Q. Ry. Co.*, 71 Iowa, 720.

The fourth special interrogatory asked was as follows: "Had the superintendent of the defendant any reason to anticipate that the large body of ice from the pond would rise and float down against the embankment, and be forced up the slope of the dump, and over the rail?" It is not shown that the ice referred to in the interrogatory was forced over the rail. The appellee contends that it was not, but that smaller pieces of ice were pushed by it over the rail, and the evidence tends to show that such was the fact. But, if the interrogatory had been submitted and answered in the negative, it would have had no effect upon the general verdict. The defendant had other officers and employes whose duty it was to know the condition of the road, and to anticipate and provide against danger which might be reasonably apprehended. One of these was the section foreman, who had charge of the track at the place of the accident, and whose duty it was to go over the section in rainy weather, in the daytime and at night, to ascertain the condition of the track, and guard against accidents. He was at the Wapsie bridges about two hours before the accident. If the condition of the stream and bridges at that time was such that danger to the track, and to the trains moving upon it, was probable, he should have taken steps to prevent accident, and the want of knowledge of the threatened danger on the part of the superintendent would have been immaterial. Moreover, the liability of the defend-

ant did not depend upon a reason known to its superintendent for anticipating that the cake of ice in question would be floated onto its track. That particular result may have been unexpected and unusual, but if it was produced by natural causes, which the defendant, by the exercise of ordinary diligence, could have guarded against, and the decedent was not in fault, it is liable. *Doyle v. Chicago, St. P. & K. C. Ry. Co.*, 77 Iowa, 610.

The eleventh special interrogatory was as follows: "If the deceased had been running his engine very cautiously, could the derailment have been avoided?" The court properly refused to submit this to the jury. It sought to inquire in regard to a mere possibility, and the answer whether in the affirmative or negative would not have controlled the general verdict.

The twelfth special finding assumes as a fact that which is not conceded, and which, we think, was not proven, namely, that the crossing of the Wapsie was attempted immediately after a heavy rain at that place; and the thirteenth special interrogatory is based upon the twelfth. We conclude that the court did not err in refusing to submit the interrogatories we have considered. See *Thomas v. Schee*, 80 Iowa, 242; *Des Moines & D. Land & Tree Co. v. Homestead & Trust Co.*, 82 Iowa, 663.

V. The appellant complains of several of the special findings, and insists that they should have been set aside because not supported by the evidence. The first is as follows: "Was the train derailed by coming in contact with a piece of ice forced up a slope of the dump, and over the north rail of the defendant's railroad track? *A.* Supposed in coming in contact with ice and giving away of ties." We think the answer was authorized. "There was evidence which tended to show that a large proportion of the ties in question were wholly insufficient; that some of them were broken off at the south rail;

and that the ends of others were "combed out" by the spikes which were forced through them by lateral pressure. It may be, if the ties had been of hard wood and sound, that the rails would have remained in place. The engine might have thrown the ice from the track without serious injury to the train, and the decedent would have escaped injury. If the jury found that such was the case, it followed that the accident was due in part to the ice and in part to the defective ties, and the answer of the jury expressed the fact. It is true they might have answered the interrogatory in the negative, but such an answer would have been misleading. The use of the word "supposed" in the answer is not objectionable. *Martin v. Central Iowa Ry. Co.*, 59 Iowa, 414. The second special finding is disposed of by what we have said in regard to the first.

VI. The third special finding is as follows: "Was the defendant guilty of any want of ordinary care in patrolling its track at the place of the accident? *A.* We think it was." When Jordan, the defendant's section foreman, examined the bridges a few hours before the accident, the river was rising rapidly, and the water was flowing under the Dry bridge. A farmer named Tierney, who lived a short distance north of the bridges, had been so alarmed at ten o'clock the previous evening by the rising water that he caused a son to watch it during the night. The rise was not unprecedented. The stream usually rose rapidly, and had been as high several times before and since the railway of the defendant had been constructed. Twelve or fifteen years before, the track was washed out at the place of the accident. It is not shown that cakes of ice had ever before been floated from the pond, and lodged against the railway, but the defendant was chargeable with knowledge of the fact that, under favorable conditions, that must happen as a natural result of well-

known laws. ' That being true, the defendant should
have guarded against resulting danger.  We think the
evidence supports the special finding.

VII.  The tenth special finding is as follows:
"Was the deceased running the engine very cautiously
7. —: —: —: at the time the engine came in contact
—: —.     with the ice?  A.  We think reason-
ably precautious."  The answer, although not couched
in the best language, conveys a definite meaning, which
is not questioned.  But the appellant complains that
the answer is not responsive to the question, and insists
that, while the latter referred to a high degree of care,
the former refers only to reasonable care.  One of the
rules of the defendant of which the decedent had
knowledge is as follows:  "79.  When trains are
running in heavy rainstorms, or immediately after
such storms, engineers will run very cautiously."  It is
evident that the rule is designed to govern the running
of trains, during or immediately after heavy rain-
storms, over portions of the track liable to be affected
by such storms.  The interrogatory in question necessa-
rily assumes that the train reached the place of the acci-
dent during or immediately after a heavy storm, which
increased the hazard of running the train at that place.
But the evidence does not show that the heavy rain-
storm which was raging when the decedent left
McGregor with his train extended west of Postville or
Ossian, some forty miles east of Wapsie, and it had
ceased several hours before the Wapsie was reached.
If there had been a heavy storm on that stream, it does
not appear that the decedent knew of it.  The jury
found that the decedent knew that he was running his
engine immediately after a heavy rainstorm, but it did
not find that the storm referred to affected the crossing
of the Wapsie.  Therefore, the interrogatory related to
an immaterial fact, as the degree of care which the jury
found that the decedent observed was all the defendant

had a right to require. But if it be assumed that the case was one to which rule 79 was applicable, and that the jury found that the decedent, at the time of his death, was using only reasonable or ordinary care, was that the degree of care required by the rule? What is reasonable care in any given case depends upon all the circumstances of the case. Acts which would amount to reasonable care in one case might constitute gross negligence in another. Under circumstances of great peril, reasonable care may require unusual precautions. Hence the ordinary rule, in cases of this kind, has been stated as follows: The employe should exercise such care as a prudent person might reasonably be expected to exercise in view of all the circumstances of the particular case, so far as they are known to him, or are discoverable in the exercise of proper diligence. *Baird v. Chicago, R. I. & P. Ry. Co.*, 61 Iowa, 361. We think the rule of the defendant under consideration was only designed to require that high degree of care which would be reasonable under the unusual circumstances which the rule specified. That construction is necessary to sustain the rule, for the reason that a railway corporation cannot avoid liability for the negligence of its employes by requiring of an employe injured by reason of such negligence more than reasonable care in the discharge of his duties. Code, sec. 1307; *Rose v. Des Moines V. Ry. Co.*, 39 Iowa, 247; *Little Rock Ry. Co. v. Eubanks*, 48 Ark. 460; 3 S. W. Rep. 808.

VIII. Rulings of the court in giving and refusing certain instructions, and in giving portions of its

8. ___: ___: ___:
verdict: evidence.

charge, are criticised. What we have already said disposes of most of the questions thus presented. It is only necessary to say that the charge to the jury was full and fair to the defendant.

The evidence tended to show a faulty construction of its roadway at the place of the accident; that insuf-

ficient provision had been made for the passage of
water; and that many of the ties were in bad condition,
and not suitable for the use which had been made of
them. The decedent seems to have managed his
engine with reasonable care. He was warned to guard
against danger at two places, but it does not appear
that he was ever informed of anything that required
unusual care at the Wapsie. On the contrary, the
employes of an east-bound train which crossed that
stream about two hours before the accident, and which
met the train of decedent at Jackson's Junction, an
hour later, reported that the road was all right. Before
the Dry bridge was reached, the decedent applied the
airbrakes, and slackened the speed of the train, releas-
ing the brakes when the level track a short distance
east of Dry bridge was reached. He was in his proper
place, looking ahead, but there was a fog above the
water, and the ice could not be seen until too late to
check the train and avoid the collision. We are of the
opinion that the evidence justified a verdict against the
defendant, and that the amount of the verdict is not
excessive.

The judgment of the district court is, therefore,
AFFIRMED.