JOHN BUETZIER, Appellee, v. BENJAMIN JONES, Appellant.

Conversion: EVIDENCE: SPECIAL FINDINGS: EXCESSIVE VERDICT.

*Appeal from Webster District Court.*—HON. S. M. WEAVER, Judge.

MONDAY, FEBRUARY 1, 1892.

ACTION to recover damages for the alleged wrongful conversion of property by the defendants Benjamin Jones and L. W. Names. The cause was continued as to Names and tried as to Jones. From a judgment in favor of the plaintiff, Jones appeals.—*Affirmed.*

*Healy & Healy* and *John F. Duncombe,* for appellant.

*Yeoman & Kenyon,* for appellee

ROBINSON, C. J.—The plaintiff alleges that the defendants confederated and conspired together to cheat and defraud him, and that, as a result of their conspiracy and efforts to carry it into effect, they wrongfully converted to their own use one hundred and sixty-eight dollars in money, certain cattle, horses, harness, and a wagon, of the value of five hundred and eighty dollars, and the avails of a policy of fire insurance to the amount of one hundred and thirty-five dollars. Judgment for actual and exemplary damages to the amount of fifteen hundred dollars is demanded. The jury returned a verdict in favor of the plaintiff for one thousand dollars, but, pending a motion for a new trial, two hundred dollars of that amount was remitted at the instance of the court, and judgment rendered against the defendant Jones for the remainder.

I. There is much conflict in the testimony, but the facts which the jury seem to have been authorized to find are substantially as follows: In November, 1884, the plaintiff owned land in Calhoun county, on which there was an incumbrance, which on the eleventh day of that month amounted to four hundred and thirty-two dollars. At that time the plaintiff owed one Schleichardt a note for one hundred dollars, given in the year 1881, and secured by a chattel mortgage on some of the cattle in question. He also owed a note for sixty dollars, given to one Goldsworthy in August, 1884, and secured by a chattel mortgage on the team, wagon, and harness. On the eighth day of November, 1884, the plaintiff, in searching for another person in Ft. Dodge to aid in obtaining money with

which to remove the incumbrance on his land, met Names, who offered to get the money required. They went out and saw Jones. He claimed of the plaintiff an amount due for meat sold him, and in settlement of that claim the plaintiff gave to Jones a note for ten dollars and thirty cents. An agreement was then made in regard to a loan, and it was arranged that the plaintiff should take his wife to Ft. Dodge, and give security for the money desired. Two days later he and his wife went to Ft. Dodge, and there met the defendants. Jones then spoke about the chattel mortgages, and proposed to advance enough money to satisfy them also. The plaintiff at first objected to the proposal, saying that he had hogs and oats to spare, and could pay the Goldworthy mortgage in January, when it would become due; and that the Schleichardt claim was not being pressed; that the interest had been paid for several years; and that he had an unsettled account with the holder. But Jones insisted on his proposition, and refused to advance any money unless it was accepted. It was necessary for the plaintiff to have the money needed at the office of the clerk of the courts at Rockwell City on the next day, in order to redeem from the incumbrance on his land and he finally yielded to the demands of Jones, and gave a note for six hundred dollars, due in one year, with interest thereon at ten per cent. per annum. The note was signed by the plaintiff and his wife, and was secured by a mortgage on the land, executed by the plaintiff and his wife, and by a chattel mortgage on the cattle, horses, harness and wagon, executed by the plaintiff. On the next day the defendants met the plaintiff at Rockwell City, and the incumbrance on the land was discharged by the payment of four hundred and thirty-two dollars to the clerk. The plaintiff claims that Jones retained the remainder of the amount for which the six hundred dollar note was given, under a promise that he would satisfy the Schleichardt and Goldsworthy claims with it, and apply the balance upon the note for ten dollars and thirty cents. He did not, however, satisfy those claims. In January, 1885, the house of plaintiff, and a portion of the contents, were destroyed by fire. The property so destroyed was covered by a policy of insurance, and soon after the fire the plaintiff met the representatives of the company, and effected a settlement; the company agreeing to pay three hundred and seventy-five dollars on account of the loss. This settlement was made without the knowledge of the defendants. In February, 1885, the property included in the Goldsworthy mortgage was seized for the purpose of foreclosing the mortgage. On the second day of March of that year the plaintiff gave to Jones a note for eighty-five dollars and sixty cents, which was designed to satisfy the mortgage last named and the note for ten dollars and fifty cents; and, to secure the new note thus given, executed a chattel mortgage on the horses, harness and wagon in controversy. It appears that the Goldsworthy mortgage was then satisfied. The insurance money not having been sent to the plaintiff at the time he expected it, he went to Ft. Dodge, where he saw the defendants, and was persuaded by them that he should recover the full amount of the policy, which was six hundred and seventy-eight dollars. Names represented that he knew the insurance men well, and could collect the full amount. Accordingly

an agreement was drawn, which the plaintiff understood gave to Names one-third of the amount of the policy in case it should be collected in full, but which was in fact an absolute assignment of one-third of the rights created by the policy. An action was commenced against the insurance company to recover the amount of the loss, and in August, 1885, the plaintiff discovered, when he went to attend the trial, that the case had been settled. He then went to Ft. Dodge, saw Names, and learned that the amount he had collected was three hundred and seventy-five dollars. On that and a subsequent visit Names accounted for two hundred and forty dollars of the money he had received, of which one hundred dollars were applied on the six hundred dollar note held by Jones, eighty-nine dollars and ten cents were applied in paying the note for eighty-five dollars and sixty cents, given to Jones in the preceding March, and the remainder was paid in money. Names retained one hundred and twenty-five dollars —or, as alleged by the plaintiff, one hundred and thirty-five dollars— which he claimed to be entitled to hold as fees for services he had rendered the plaintiff. The plaintiff claims, and so testified, that the note for ten dollars and thirty cents, included in the eighty-five dollar and sixty-cents note, had been paid with oats he had delivered to Jones, and that he had demanded the note several times after payment, but without success. In November, 1885, the plaintiff obtained from Schleichardt a credit on the note he held which paid the interest and twenty-five dollars of the principal. On the fifth day of December, 1885, Jones took from Schleichardt an asssignment of his note and mortgage, for which he paid seventy-five dollars and twenty-five cents. A few days later he commenced the foreclosure of the mortgage he thus acquired, and of the chattel mortgage given to him by the plaintiff in November, 1884, and the property in controversy was sold under the mortgages during the latter part of December, 1885. The amount received on the sale was two hundred and seventy-six dollars and ten cents, from which fifty-eight dollars were deducted as expenses, leaving two hundred and eighteen dollars and ten cents, which were paid to Jones. Of that amount Jones has credited himself with seventy-five dollars and sixty-two cents as paid to Schleichardt for his claim, and has indorsed one hundred and forty-two dollars and forty-nine cents on the six hundred dollar note in addition to the one hundred dollars received from the insurance company.

The defendant Jones alleged in justification of his taking and selling the cattle, horses, harness and wagon, that it was done by virtue of the power conferred by the chattel mortgage given to him in November, 1884, to secure the six hundred dollar note, which was due and unpaid when the property was taken and sold. In his reply the plaintiff avers that the real estate mortgage was given to secure a loan for four hundred and thirty-two dollars, and that the chattel mortgage given at the same time was designed to secure a loan for one hundred and sixty-eight dollars, which was to be applied in paying the Schleichardt and Goldsworthy claims and the note to Jones for ten dollars and thirty cents, and that it was not to take effect unless Jones should first pay those claims so far as the sums designed to be secured would pay them; that such payment was

not made, and that the chattel mortgage was void for want of consideration. The defendant Jones claims that the chattel mortgage for six hundred dollars was given as additional security; that all of the six hundred dollar loan was paid to the plaintiff, and that he used four hundred and thirty-two dollars of it in redeeming his land, and kept the remainder for his own use; that the oats were delivered to him as a bonus given to secure the loan for the payment of the Goldsworthy mortgage; and that , he acted in good faith, and with due authority, in all that he did. The alleged conspiracy with Names is denied. We are free to say that there is much evidence which tends strongly to support the claims of this defendant, and that, if the cause was triable here anew, we should not find in all respects as the jury did. But there is evidence to sustain the claims of the plaintiff, and, if they are well founded, he has been greatly oppressed by the defendants, and is entitled to relief. He is illiterate, making his signature with a mark. Jones and Names seem to have acted in concert to a considerable extent. We cannot say the judgment is so far unsupported by the evidence that we are authorized to set it aside.

II. Several special interrogatories were submitted to the jury, some of which were not answered. The right of a party to have all interrogatories he asks submitted to the jury and answered is not absolute. *Scagel v. Chicago, M. & St. P. R'y Co.*, 83 Iowa, 380. We have examined those in question, and conclude that, so far as material, they were answered in the special findings which the jury returned.

III. The appellant insists that the amount for which judgment was rendered is excessive, and complains of certain portions of the charge as of a nature to permit the jury to allow more than the plaintiff was entitled to recover. If that be conceded, the amount which could have been so allowed is less than that which the plaintiff was required to remit; therefore we must presume that the error, if any, was cured by the remission.

IV. Much complaint is made of the failure of the court to instruct the jury in regard to certain matters which the appellant insists were material. The court charged the jury quite fully in regard to the issues submitted for their determination. The defendant asked no instruction with reference to the matters to which he refers, and cannot now justly complain of the omission of the court to instruct the jury in regard to them.

Other questions discussed, which are governed by former decisions of this court, need not be specially mentioned. We have examined all the questions presented by the appellant, but fail to discover any ruling or omission of the district court of which he can complain, which could have resulted to his prejudice. The judgment of the district court is AFFIRMED.