THE ATCHISON, TOPEKA & SANTA FE RAILWAY COMPANY v. T. L. RYAN, as *Administrator of the Estate of M. J. McGlade, deceased.*

No. 11,796. (64 Pac. 603.)

1. ACTION FOR DEATH—*"Next of Kin" Defined.* The phrase "next of kin," as used in the statute providing for the recovery of damages for wrongfully causing a death, civil code, section 422 (Gen. Stat. 1897, ch. 95, § 418; Gen. Stat. 1899, § 4686), means those kin who inherit from the deceased under the statute of descents and distributions.

2. ———— *Measure of Damages — Contribution to Support and Education of Next of Kin.* An action upon the statute above mentioned is for pecuniary loss to those entitled to the recovery, and when brought in behalf of the next of kin, to whose support the deceased was under no legal obligation to contribute, it can be maintained for substantial damages only by proof that he was in the habit of contributing to their support or education and might be reasonably expected to continue such habit, or by proof of declarations, acts, conduct, or relevant circumstances, reasonably tending to show an intention upon his part to make such contributions of support or education. *Held*, therefore, that in a case totally lacking all the above facts and elements of reasonable

probability, a verdict for $5000 for the death cannot be sustained, but must be set aside.

3. ———— *Admissions by Next of Kin.* In an action upon the above-mentioned statute brought in behalf of the next of kin of the deceased, an admission by them that he had never contributed to their support or been of any pecuniary assistance to them is competent evidence against the administrator, their nominal representative in the suit.

4. ———— *Tables of Life Expectancy.* The courts judicially know the standard tables of life expectancy, and may allow them to be read to the jury out of encyclopedias of known authenticity and general use.

Error from Chase district court; W. A. RANDOLPH, judge.   Opinion filed April 6, 1901.   *In banc.*   Reversed.

*A. A. Hurd, O. J. Wood,* and *W. Littlefield,* for plaintiff in error.

*Madden Bros.,* for defendant in error.

The opinion of the court was delivered by

DOSTER, C. J. : This was an action brought by T. L. Ryan, as administrator of the estate of M. J. McGlade, deceased, in behalf of the latter's next of kin, against the Atchison, Topeka & Santa Fe Railway Company, to recover damages for negligently causing the death of said McGlade.   A verdict and judgment were rendered for plaintiff, to reverse which defendant has prosecuted error to this court.   The action was brought upon the statute (Gen. Stat. 1897, ch. 95, § 418; Gen. Stat. 1899, § 4686), which reads as follows :

"When the death of one is caused by the wrongful act or omission of another, the personal representatives of the former may maintain an action therefor against the latter, if the former might have maintained an action had he lived against the latter for an

injury for the same act or omission.  The action must
be commenced within two years.  The damages can-
not exceed $10,000, and must inure to the exclusive
benefit of the widow and children, if any, or next of
kin, to be distributed in the same manner as personal
property of the deceased."

The petition named as next of kin Arthur McGlade,
a brother, Elizabeth Burns, a sister, and John Langlois,
a nephew, the son of a deceased sister.  It is objected
that the nephew is not within the class denominated
1. "Next of kin"   in the statute "next of kin," and hence
defined.           that the action cannot be prosecuted in
his behalf.  Our attention has not been called to any
decisions defining the phrase "next of kin," as used
in such a statute as the one above quoted, and there-
fore we are compelled to try to ascertain its meaning
without the aid of precedents.  Our judgment is that
it comprehends all those who inherit from the de-
ceased under the statute of descents and distributions.
It is true that the amount recovered in an action upon
the statute forms no part of the estate of the deceased.
It is not property which descends from ancestor to
heir.  (*Perry, Adm'r, v. St. J. & W. Rld. Co.*, 29 Kan.
420.)  However, as declared by the statute in ques-
tion, the amount recovered "inures to the benefit of
the next of kin"; and "is to be distributed in the
same *manner* as personal property of the deceased."
Ordinarily, a statutory direction as to the "manner"
of doing a thing is not understood to be a direction as
to matters of substantive right, but only as to the
forms of procedure to be observed; but in this instance
we are constrained to think that the former and not
the latter is meant.

The statute is dispositive of property interests and
not regulative of modes of practice.  There is nothing

about the nature of the act to be performed—that is, about the distribution of the fund recovered—to which rules of procedure can be applied. An amount of money is to be paid by a judgment debtor and shared between several judgment creditors. There is nothing for the one to do but pay it, nor for the others to do but divide it. There is absolutely nothing in any of the acts to be done of which manner of legal procedure can be predicated. The statute, therefore, is not a direction to distribute according to certain forms, but it is a direction to distribute to certain persons. Those persons are the ones to whom the personal property of the deceased is to be distributed. In the lack of wife, children, or parents, such persons are the surviving brothers and sisters, and the children of deceased brothers and sisters. (Gen. Stat. 1897, ch. 109, §§ 18–20 ; Gen. Stat. 1899, §§ 2458–2460.) Therefore, the phrase "next of kin," as used in the statute in question, means those kin to whom the personal estate of the decedent descends.

This view accords with such decisions as have a bearing on the subject. In *Pinkham v. Blair*, 57 N. H. 226, 242, a devise to the testator's "next of kin" was held to include not merely his surviving brothers and sisters, but the children of his deceased brothers and sisters, as well. This because the statute of descents of the state vested such children with the inheritable rights of their deceased parents. A statute authorized a certain class of actions to be brought against the "next of kin" of a deceased person. It was held that the term included those to whom, under the statute of distributions, the personal estate of the deceased would pass. (*Merchants' Ins. Co. of New York v. Hinman*, 34 Barb. 410.) The court below, therefore,

did not err in holding the nephew, John Langlois, to be of the next of kin of the deceased.

M. J. McGlade, the deceased, was a railway mail clerk and had been such for ten or eleven years. He was thirty-eight or thirty-nine years old at the time of his death, and at that time was receiving a salary of $1150 per annum. His health and habits were good, and he had accumulated as property a house and lot in town worth $800 or $900, $500 in money, and had a life insurance policy for $6000. He was unmarried. His parents were dead, and his next of kin were the brother, sister and nephew before mentioned, all of whom lived in Canada. The nephew was a boy nine or ten years old. The brother and sister were adults, and the latter was a married woman. The deceased had visited his relatives in Canada three times, the first two of which were in the lifetime of his parents, but all these visits were several years before the occurrence of his death. While interest in and affection for the brother, sister, and nephew, upon the part of the deceased, may be assumed from the fact of his relationship to them, there was no evidence of any manifestation of it. All his earnings had been expended upon himself. There was no evidence that he ever contributed in any sum or in any way to the support, education or comfort of his brother, sister, or nephew.

2. Measure of damages.

The jury returned a verdict against the defendant for $5000, and also made the following findings :

"Ques. Did the deceased ever contribute anything to the support of his brother, Arthur McGlade? Ans. No evidence.

"Q. Did the deceased ever contribute anything to the support of his sister, Mrs. Elizabeth Burns? A. No evidence.

"Q. Did the deceased ever contribute anything to

the support of his nephew, John Langlois? A. No evidence.

"Q. Where did the deceased live at the time of his death, and how long did he reside at such place? A. Headquarters at Kansas City, but no evidence of length of time.

"Q. What are the respective ages of the brother, sister and nephew of the deceased? A. The first two, no evidence; age of nephew, nine or ten years.

"Q. What are the financial conditions of said brother and sister? A. No evidence."

In the light of the evidence above summarized and the findings of the jury above quoted, it is not possible to sustain the judgment rendered in this case. It is not, however, a case of excessive damages given under the influence of passion and prejudice, and, therefore, to be set aside under the statute, but it is a failure to make proof of substantial damages, and therefore to be set aside, on the general principles of law. An action of the character of this one is purely compensatory. It is brought to recover for pecuniary loss consequent upon death. There being no legal liability resting upon M. J. McGlade to contribute to the support of his kinspeople, they can maintain the action only upon proof that he had contributed to them in some way, or had recognized his family obligation to do so and had manifested a disposition to discharge it. All the authorities are to this effect. (*A. T. & S. F. Rld. Co. v. Brown, Adm'r*, 26 Kan. 443; *A. T. & S. F. Rld. Co. v. Weber, Adm'r*, 33 id. 543, 6 Pac. 877; *Coal Co. v. Limb*, 47 id. 469, 28 Pac. 181.) In the last case cited it was said:

"This is an action for compensation only, and no damages can be recovered by the plaintiff below except for the pecuniary loss which the parents sustained by the death of the son. The burden was on the administrator to show that loss occurred. If there was

no evidence that his life had been of actual benefit to the parents, or that any benefits might be reasonably expected by the continuance of his life, then no more than nominal damages could be recovered. (*Railroad Co. v. Weber*, 33 Kan. 543.) There must have been evidence either of actual benefits or those in expectation before the jury can give substantial damages; and an attempt to assess such damages without proof would be to indulge in mere conjecture, which is not permissible. If the son had contributed anything in the past, there would be grounds for the expectation that he would have continued to contribute in the future; or if the son was a minor, the parents would have a legal right to the services of the son during his minority; but after majority no such legal right exists, and the benefits thereafter would depend upon the capability of the son and his disposition to confer benefits on his parents.''

We do not mean to say that there must be evidence of support currently furnished by a deceased to his next of kin, or presently promised to them by word or act of his. Expectation of descent or devise of property may be indulged by them, and may justify an action for pecuniary loss, although we do not so decide; but, if so, that expectation, like the expectation of support, must rest upon a reasonable basis. In such case there must be something in the conduct, declarations, disposition or acts of the deceased toward his next of kin to give rise to a belief that they would profit out of his estate, provided that, dying in the future, he should leave one greater than he did leave, and provided, also, that it should not go to others by devise or by his marriage. These last-mentioned matters are so nearly in the nature of vague speculations as hardly to be worth consideration in many cases, even if to be considered in any case at all; but taking them into account for what possibly may be made out of

them, there was nothing in this case in the conduct of the deceased toward his brother, sister, or nephew, or in his regard for them, as manifested by any acts or words of his, to justify a verdict for $5000 for the loss to them through his premature death of an estate larger than the one he did leave. On the contrary, there was a total failure of proof of any facts, outside the bare fact of the relationship of the parties, to justify anything beyond nominal damages.

However, we wish to say in this connection that the plaintiff offered evidence which, if received, would have tended to prove an intention upon the part of the deceased to educate and support the nephew. It consisted of declarations to that effect made by him. It seems to have been rejected by the court upon the theory that it was hearsay. Without determining the question, because it is not before us for determination, the correctness of the ruling made would seem to be questionable. (*Commonwealth v. Trefethen*, 157 Mass. 180, 31 N. E. 961, 24 L. R. A. 235.) The questions of evidence determined in *The State v. Baldwin*, 36 Kan. 1, 12 Pac. 318, would seem to be somewhat of the same nature as the one considered by the court below in this case.

The defendant railway company offered to prove by the declarations of Arthur McGlade, the brother, and 3. Admissions by next of kin. Elizabeth Burns, the sister, that the deceased had never rendered them any pecuniary assistance. The court rejected the offer. This was error. While the jury failed to find that the deceased had been of any pecuniary assistance to his next of kin, and therefore, in legal effect, found that he had not been of any pecuniary assistance to them, yet before that finding was made, and to induce its making, the defendant was entitled to offer evidence of the fact.

While the findings of the jury have cured the court's error in rejecting the offered testimony, it may be well, nevertheless, to state the rule of evidence for guidance on a future trial. The action was prosecuted by the administrator for the benefit of those who had sustained loss by the death. Nominally the administrator was the party plaintiff, but in reality he was unconcerned as to the result. As remarked in *U. P. Rly. Co. v. Dunden*, 37 Kan. 1, 14 Pac. 501: "The personal representative, in cases like this, brings the action, not for himself nor in the right of the estate, but as trustee for the distributees—the next of kin." The rule in such cases is that the admission of the *cestui que trust*, or party beneficially interested, is neither hearsay nor incompetent, but may be received against his trustee or other nominal representative. (2 Whart. Ev. § 1213.)

At the trial plaintiff read the tables of life expectancy as published in the Encyclopedia Britannica,

4. Tables of life expectancy. to which objection was made. We are quite well satisfied that courts are entitled to take judicial notice of the standard tables of life expectancy and may allow them to be read in evidence to the jury. (*Erb v. Popritz*, 59 Kan. 264, 52 Pac. 87; *Donaldson v. Mississippi & Missouri Railroad Company*, 18 Iowa, 280; *Scheffler v. Minneapolis & St. Louis Ry. Co.*, 32 Minn. 518, 21 N. W. 711; *Abell v. Penn Mutual Life Ins. Co.*, 18 W. Va. 400; *Gordon, Rankin & Co. v. Tweedy*, 74 Ala. 232.) These tables consist of summarized statistical information on a matter of general interest. They are, therefore, impartial and disinterested, and they are so nearly in the nature of exact science or mathematical demonstration as to be credible and valuable. Consequently the uniform practice of the courts is to receive them

in evidence. If the courts judicially know the standard tables of life expectancy when presented to their observation, they may assure their knowledge by reference to publications containing them. The only easily accessible authentic publication of such tables is to be found in the standard encyclopedias like the Britannica. The courts recognize such publications as being authentic and in general use, and, therefore, may receive them in evidence as to matters contained therein of which judicial knowledge is possessed.

A statute of Iowa authorized the introduction in evidence of "historical works and books of science, when made by persons indifferent between the parties, as presumptive evidence of facts of general notoriety or interest therein stated." The supreme court of that state held the Encyclopedia Britannica to be a work or book of the kinds mentioned, and affirmed the correctness of the reading therefrom of the Carlisle table of life expectancy. (*Worden v. Humeston & S. Ry. Co.*, 76 Iowa, 310, 41 N. W. 26.) The defendant in the present case did not pretend that the tables read to the jury were not standard, or that the encyclopedia read from was not an authentic and reliable work.

For the errors pointed out, the judgment of the court below is reversed and a new trial ordered.