HAWLEY v. THE CHICAGO, BURLINGTON & QUINCY RAILWAY COMPANY.

1. **Personal Injury**: ACTION BY ASSIGNEE. The assignee of a claim for damages through a personal injury may maintain an action thereon. (*Vimont v. Chicago & N. W. R'y Co.*, 69 Iowa, 296, followed.)

2. **Pleading**: PENDENCY OF OTHER ACTION. An answer to an action brought by an assignee, which states that the assignor, previous to his assignment to the plaintiff, commenced an action against the defendant for the same claim in his own name; that said action was removed to the circuit court of the United States; and that no order had been made dismissing it, and that the defendant has not stipulated that it should be dismissed, but which fails to aver that the action is still pending, *held* not sufficient as a plea of the pendency of another action.

3. **Special Interrogatories**: NOT DETERMINATIVE: UNNECESSARY: AMBIGUOUS. Certain special interrogatories asked on the trial of this case *held* to have been properly refused, because the answers, however given, would not have been determinative of the case; and, as to one, there was no dispute as to the evidence, and others were ambiguous.

4. **Railroads**: PERSONAL INJURY: CARE REQUIRED OF EMPLOYE FOR HIS OWN SAFETY. Plaintiff's assignor was an employe of defendant, and he was run down by a train, and injured, while riding on a hand car in the performance of his duty. In an action to recover for the injury, the court instructed the jury that it was his duty " to be reasonably vigilant and watchful, in view of what he knew, or might reasonably have expected, as to the movement of the engine, to exercise his senses of seeing and hearing as a reasonably prudent man would have done under the circumstances." *Held* correct, as against the objection that it did not emphasize sufficiently the perils to which he was exposed.

5. ———: ———: ———. In such case, where the evidence tended to show that the employe was told by the engineer of the engine which struck him that it would not start for fifteen minutes, but that it actually struck him in about seven minutes, he could not be charged with negligence in not keeping a vigilant watch in his rear up to the time of the accident, even though, had he done so, he might have been able to get off the track in time to avoid the injury; for he had a right to repose some confidence in what had been told him.

6. ———: ———: RELIANCE UPON ENGINEER'S STATEMENT AS TO MOVEMENT OF TRAIN. In such case, while the engineer was subject to the orders of the conductor, and the employe had no right to rely upon what he said as to the time the train would start as being *authoritative*, yet, where the engineer stated, as a reason why it would not start for fifteen minutes, that they would have to light up and oil up first, *held*

that the employe might rely upon such statement as *information*, and might with reason expect that, after having been so informed, he would not be run down within half that time; for the engineer was not bound to obey the conductor as to the movement of the train, if by so doing he was likely to run down the hand car, and endanger the lives of those on it.

*Appeal from Polk Circuit Court.*

TUESDAY, OCTOBER 21, 1886.

ACTION for a personal injury. There was a trial to a jury, and verdict and judgment were rendered for the plaintiff. The defendant appeals.

*Runnells & Walker, J. W. Blythe* and *H. H. Trimble,* for appellant.

*Nourse & Kauffman,* for appellee.

ADAMS, CH. J.—One Faught, an employe upon the defendant's road, was, on the night of the twenty-fourth of June, 1882, operating, with others, a hand car on the road, going south from Davis City, and, while so engaged, was injured by reason of an engine upon the road being run against the hand car while following it from behind. Faught's claim for damages he has assigned to the plaintiff.

The questions presented to the jury were, as to whether any of the persons in charge of the engine were guilty of negligence in running upon the hand car, and, if so, whether the plaintiff had shown that he was free from contributory negligence. A large number of errors are assigned. For a proper understanding of them it is necessary to set out a little more in detail the facts connected with the accident. As to some of them there is some dispute; but it is undisputed that, on the night in question, Faught was sent with his hand car from Andover, Missouri, northward, with an important message to one Sullivan, who was at Davis City, in charge, as conductor, of the train which included the engine by which the injury was done. Faught went to

Davis City, and delivered his message to Sullivan, and started to return home, when he was overtaken by the engine which was being run by one Southerland, as engineer. Obedience to the message required that the engine should go southward over the track upon which Faught had started southward with his hand car a few minutes before. At the time of the accident the engine was running around a curve at from twenty-five to thirty miles an hour. The night was dark, and the hand car could not be seen more than one hundred and twenty-five feet ahead, and was, when seen, about that number of feet distant. At the rate of speed at which the engine was running, it could not be stopped in that space. It is not clearly shown that either Sullivan, the conductor, or Southerland, the engineer, knew for a certainty that Faught, with his gang, had left Davis City with the hand car, but it seems to have been distinctly understood that they were either to precede or follow the engine, and it is shown beyond controversy that a question was raised as to whether the engine would be delayed long enough to enable the hand car to precede it with safety. Faught was told, according to the engineer's testimony, that the engine would not start for ten or fifteen minutes, and, according to some of the testimony, that it would not start for fifteen minutes. There was evidence tending to show that it started in less than ten minutes, and ran at a higher rate of speed than was necessary. While, as before stated, it is not shown beyond dispute that either the conductor or engineer knew for a certainty that Faught had started when the engine left Davis City, it seems to be indisputable that it could have been ascertained by slight observation whether he had or not, and there is some ground for the inference that the engineer, if not the conductor, supposed that he had. The negligence is alleged to consist in starting so soon, and in running at so high a rate of speed, and especially around a curve where the head-light could not reveal the hand car at a very great distance. Some other facts will be stated in the course of the opinion, but

the foregoing statement is sufficient to enable us to enter properly upon the specific consideration of the errors assigned.

I. Some questions are raised in regard to the right of the plaintiff, as assignee of Faught, to prosecute the action. We regard these questions as substantially disposed of by the previous decisions of this court, and especially by the case of *Vimont v. Chicayo & N. W. R'y Co.*, 64 Iowa, 513, and 69 Id., 296.

1. PERSONAL injury: action by assignee.

II. After the cause had been set down for trial upon a day named, the defendant asked leave to file an amendment to its answer, averring that Faught, previous to his assignment to the plaintiff, commenced an action against the defendant for the same claim in his own name; that said action had been removed to the circuit court of the United States; and that no order had been made dismissing it, and that the defendant had not stipulated that it should be dismissed. The court refused to allow the amendment, and the defendant assigns the refusal as error. The proposed amended answer does not aver that the action brought by Faught was still pending. On the other hand, such averment seems to be ingeniously avoided. We suspect the fact to be that Faught had withdrawn his action, or ordered that the same be ·dismissed, without any distinct order to that effect being made by the court. If the fact is as we suspect, and as it might be consistently with the averments of the proposed amended answer, the circuit court could not treat the case otherwise than as withdrawn.

2. PLEADING: pendency of other action.

III. Before the submission of the cause, the defendant propounded a large number of special interrogatories, and requested that the court require the jury to answer them, which the court refused to do, and the defendant assigns the refusal as error.

3. SPECIAL interrogatories: not determinative: unnecessary: ambiguous.

We cannot properly set out the interrogatories in full. They all have the common characteristic that they call for a

finding of fact not necessarily determinative of the case. The fourth and fifth questions, for instance, inquired whether the engineer *agreed* with Faught, or only *gave an opinion*, that he would not start his engine in less that ten or fifteen minutes. Under the evidence, the jury might have found that the engineer merely stated that he should not start for ten or fifteen minutes. Whether the jury should regard the statement as an agreement, or a mere statement, or an opinion, their finding upon the question would not be decisive of the case, nor, indeed, one of any great importance, viewed in connection with all the other evidence in the case. If Faught did not start from the immediate presence of the engineer, it was so nearly from his immediate presence, we have not a doubt, that Faught took it for granted that the engineer knew he had gone, and would not start sooner than he had stated, or, if he did, would not run him down upon a curve in a dark night at a speed of from twenty-five to thirty miles an hour. If, then, the answer sought had been most favorable to the defendant, it would have gone but little way towards showing that the defendant was free from negligence, or that the plaintiff was guilty of it. The same may be said of the other interrogatories.

We do not say that a party may not be entitled to have a special interrogatory submitted, even where it is such that an answer most favorable to the party would not entitle such party to a verdict. But we do not think that a party is necessarily entitled to a special finding upon every circumstance which might have some bearing upon the case. If we should hold that he is, it might become a favorite mode of trial for each party, by requiring a special finding, to seek to give prominence to every circumstance which he regarded as more or less favorable to him.

It might seem, at first, that the sixth interrogatory called for a material finding. That interrogatory is in these words: " Did Southerland start his engine south before the expiration of ten minutes?" This interrogatory pertains to the very mat-

ter in which the negligence was alleged to consist. There was evidence tending to show that Faught might have expected that the engine would start in ten minutes; and if the jury had believed this evidence, and believed also that the engine did not start in less than ten minutes, they might have found that the defendant was not negligent. But an answer to the interrogatory, to the effect that the engine did not start in less than ten minutes, would not alone have been of any special value to the defendant, because there was evidence tending to show that Faught had reason to expect that the engine would not start for fifteen minutes. The special interrogatory should have been as to whether the engine started sooner than Faught had been told that it would.

Another interrogatory is in these words: "Did he [Faught] start said hand car in disregard of the request of the conductor, Sullivan, to not start said hand car until the return of the engine?" The defendant claims that, if Faught did start in disregard of such request, he was guilty of contributory negligence. But we cannot say that he was, necessarily. This will appear more clearly if we set out some of the evidence upon this point. Faught testified in these words: "Sullivan, the conductor, was there, and he said, 'You had better not go now, as we are going to the Y to turn the engine.' We took hold of the car, and had partly set it off of the track, when the engineer said: 'You need not set it off, for we will not run out for fifteen minutes. We have not lit up nor oiled up.'" This remark by the engineer appears to have been made after Sullivan made his request or gave his advice not to start out with the hand car, and does not appear to have been heard by Sullivan. It was a fair question for the jury as to whether Faught was guilty of contributory negligence in view of what they might have found that the engineer said. Besides, there is no dispute as to what Sullivan said. Faught himself testified substantially as Sullivan did on that point. The defendant, therefore, has the benefit of the fact without a special finding, and is not

prejudiced by the refusal to submit the special interrogatory upon that point.

Some of the questions appear to us to be ambiguous. Take the twelfth: " Did Southerland exercise ordinary care in the manner of running his engine after leaving the depot, and prior to the accident?" This question we think the jury would have been obliged to answer in the affirmative, if it excluded the matter of speed. But running thirty miles an hour is not uncommon, and is not of itself negligence. It is doubtful, then, what view the jury would have thought that it ought to take of the meaning of the question. The real question touching this matter the jury understood perfectly without any special interrogatory, and that is: Is it ordinary care to run thirty miles an hour, or at whatever rate the speed was, on a dark night, behind a hand car, if it is known, or should be known, that the hand car is ahead, and has had but a few minute's start, and there are curves in the road which preclude it from being seen, even with a headlight burning, more than one hundred and twenty feet distant? We think that the court did not err in refusing the special interrogatories.

IV. The court instructed the jury that " it was Faught's duty to be reasonably vigilant and watchful, in view of what 4. RAILROADS: he knew, or might reasonably have expected, as personal injury: care to the movement of the engine, to exercise his required of employe for senses of seeing and hearing as a reasonably his own safety. prudent man would have done under the circumstances." The defendant assigns the giving of this instruction as error. The objection made to the instruction is that the language is tame, and not adapted to the case, in view of the hazardous situation in which Faught had placed himself. But, in our opinion, Faught was not bound to exercise any greater degree of care than the instruction prescribed. If he was, he was bound to be more careful than a reasonably prudent man would have been under the circumstances. The fact that Faught's situation was hazardous does not ren-

der the instruction inapplicable. The more hazardous the evidence showed it to be, the more care was Faught bound to exercise, and the more he did exercise, if he conducted himself as a reasonably prudent man would have done *in view of the circumstances.*

The real objection which the defendant seems to have to the instruction is that it did not emphasize sufficiently the perils to which Faught was exposed by calling specifically the attention of the jury to them. This is shown by an instruction which the defendant asked, and which was not given. It was in these words: "The degree of diligence required of him depends on the amount and character of the danger. As the danger in this case was very grave and destructive, he was required to exercise corresponding vigilance." All the law contained in this instruction was given by the court. The instruction asked exceeds that given by the court, in that it contains a declaration of fact in regard to the gravity of the danger of which the jury was to judge for itself. We think that the court did not err, either in giving the instruction which it did, or in refusing that which was asked.

V. The defendant asked an instruction in these words: "If, by keeping a vigilant watch while moving his hand car, he [Faught] could have ascertained the approach of the engine, and by prompt action in removing his car from the track he could have avoided the collision complained of, and he failed to keep a vigilant watch in his rear while running his car, or failed to remove the same promptly from the track when the engine approached so near as to threaten collision, then he was guilty of contributory negligence, and the plaintiff cannot recover." The court refused to give this instruction, and the defendant assigns the refusal as error. We are inclined to think that Faught might have discovered the approach of the engine in time to remove his car from the track. This, we think, he might have done if he had kept a constant, or very nearly

constant, look towards the rear. We are inclined to think that he did not do this; and perhaps did not keep what could be said to be a "vigilant watch" within the meaning of the instruction asked. But we cannot say, as a matter of law, that he was guilty of contributory negligence in failing to do so. If Faught was told, as he says that he was, and as the evidence tended strongly to show that he was, that the engine would not be ready to start for fifteen minutes, he could hardly be expected to have apprehended the approach of the engine during the first half of that time; and yet there was evidence tending to show that he was run over in about seven minutes from the time he started. If he had had any reasonable ground to suppose that the engine could have been seen approaching during the first seven minutes, it is not probable that he would have gone upon the track at all. We think that the jury might well have believed that a prudent man might have failed, under the assurance given, to keep a lookout during that time. If he had entered upon the track without anything being said as to when the engine would start, and without reasonable ground for supposing that the engineer knew that he was preceding the engine, the case would be very different. Under such circumstances he should, of course, have kept an unremitting watch for the engine. But he was certainly justified in placing some confidence in the assurance given, and the care which he was bound to exercise was to be determined in reference to them. We think that the court did not err in refusing the instruction.

VI. The court gave an instruction in these words: "The acts and omissions of the defendant's employes, which it is claimed caused the accident and injuries complained of, are, briefly stated, as follows: That the said James Faught, at the time stated in the petition, was at Davis City, in obedience to orders from his superior, and in the performance of his duty; that, as he was about to return to his post of duty, he asked the engineer in charge of the train how soon said train would start for Chariton, and said engineer told him

that it would be not less than fifteen minutes; that, in reliance upon said statement, Faught, with his squad of men and the hand car, started for home over the track over which the engine would pass when it started; that in less than five minutes after said statement had been made by said engineer, said engineer started his engine," etc. The giving of this instruction is assigned as error. The objection urged to it is that it is so drawn that the jury might have supposed that the facts stated had been found to be true, and not merely that they were what the plaintiff claimed to be true. But, in our opinion, the objection is not well taken. The court set these facts out very distinctly, as being the plaintiff's claim, and we do not think that the jury could have understood it otherwise.

Another objection urged is that the court did not tell the jury that Faught did not have a right to rely upon the engineer's statement. To this we think that two answers may be made. In the first place, the court was merely setting out the plaintiff's claim. In the second place, while it may be true that Faught had no right to rely upon the engineer's statement in regard to the exact length of time mentioned, we think that he had a right to rely upon his not starting as soon as some of the evidence tended to show that he did.

VII. The defendant asked an instruction in these words: "The engineer had no authority to make any agreement with Faught, binding on the defendant, that he would not start the engine for ten or fifteen minutes. The engineer was subject to the orders of his superior officer in the movement of trains, and Faught, while assuming to act as an officer of the defendant company, and in its employ, must be supposed to know this fact, and to govern himself accordingly." The court refused this instruction, and the refusal is assigned as error.

6. ——: ——: reliance upon engineer's statement as to movement of train.

There was evidence showing that the engineer started in obedience to the order of the conductor, and tending to show that the conductor gave the order in ignorance of what had been said by the engineer to Faught. This, we think,

accounts for the start being made so soon, and for the accident. But the engineer was not bound to obey the conductor's orders if he had reason to believe that in doing so he would run down the hand car, and endanger the lives of those on it. There is an implied reservation accompanying every order, that it is not to be executed where it cannot be done with reasonable regard to the safety of human life. Perhaps the defendant's counsel would concede this. We are inclined to think that the instruction was asked more as affecting the question of the plaintiff's negligence than as affecting the question of the defendant's. Faught doubtless knew that the engineer could not properly agree as to how long he would hold his engine. But what was said was not so much in the nature of an agreement as in the nature of information. Some things were to be done before the engine could start, and the engineer claimed to have knowledge how long it would be, and Faught acted upon the information given; and it was a fair question for the jury as to whether he was guilty of negligence in doing so. If the engine had been ready to start, and Faught had nothing to rely upon except an agreement of the engineer that he would hold the engine, the case would have been different. The instruction asked was, we think, inapplicable to the case made, and properly refused.

VIII. The defendant complains of an instruction upon the ground that under it the jury might have found that there was culpable negligence in starting. The objection is that the starting, without more, could not have caused the accident. But this the jury understood perfectly, and they were not misled. The case is a very simple one, and very easily understood. It was presented to the jury by a set of intelligible instructions, and it appears to us to have been fairly tried. We have not specifically noticed every question raised, but we think that they are substantially covered by what we have said.

We think that the case was fairly tried, and that the verdict is supported by the evidence. AFFIRMED.