THE GERMAN SAVINGS BANK OF DAVENPORT, IOWA, v. THE CITIZENS NATIONAL BANK OF DAVENPORT, IOWA, Appellant, THE CITY NATIONAL BANK OF CLINTON, IOWA, Intervener, Appellant.

**Banks:** NEGLIGENCE. A bank which gave a check to a specified person for whom another has negotiated a loan, is not negligent in stating to another bank to which such check is presented for payment, that it has made a loan to the person named as payee therein, although the person negotiating the loan improperly obtained the check and forged the payee's name thereon; and this is so though it fails to say that all its dealings were with said negotiator, and that it had never seen the payee.

*Same.* A bank is not guilty of negligence in failing to discover for nearly a year that the name of a payee of a check given by it had been forged, where such check had been discounted by another bank and returned to the drawing bank with an apparently genuine indorsement by such payee.

FORGED INDORSEMENT: *Payment upon.* A bank to which is presented a check purporting to be indorsed, must, at its peril, know that such indorsement is genuine, before it will be protected in discounting the same.

*Interest.* Where one bank pays out the money of a depositor upon his check bearing a forged indorsement, he can recover interest on the amount so paid from the time it is paid, though the bank pays him no interest on his deposits, where he is compelled to make sufficient additional deposits to keep his account intact.

PRINCIPAL AND AGENT. A bank placed a loan through an agent and gave him a check for the proceeds, payable to the borrower. *Held,* The fact that such agent forged an indorsement of the check does not make the bank liable to one who discounts such check.

**Evidence:** REPEATING TELEPHONE MESSAGE. Evidence as to what one, with whom conversation by telephone was had, repeated to a third person as to the answers he obtained, is inadmissible against the one with whom the conversation was held.

CONSTRUCTION OF MESSAGE. A check drawn by one bank was presented to another, bearing a forged indorsement. Before paying, telephonic inquiry was made of the drawer. The drawer says the answer was that the check was "all right." The paying bank claims that it was told it would be all right to cash the check

*Held*, The drawer was justified in treating the general inquiry as relating, merely, to the genuineness of the signature and the existence of funds to meet the check, unless it was such as to indicate that the title to the check was inquired after; and the burden is on the paying bank to show that it was authorized to pay it on the indorsement presented.

**Change of Venue:** AFTER CONTINUANCE.   Under Code, section 2591, requiring an application for change of venue on the ground of local prejudice to be made before a continuance is had, except when the grounds were unknown before the continuance, an application made after a third continuance, on grounds not shown to have been unknown prior to the first continuance, was properly overruled.

**Coercing Jury.**   A statement by the judge to the jury, on their stating, after being out twenty-two hours, that they are unable to agree, that the case is submitted to them for "decision and not for disagreement," and that he thinks he will let them give it a further trial, is not objectionable as being calculated to coerce the jury into agreeing on a verdict.

**Interrogatories** which cover no fact necessarily determinative of the case and which could not control a general verdict adverse to one asking it, though answered favorably to him, is properly refused.

**Transfer of Action:** PARTY IN INTEREST: *Banks.*   One whose money has been improperly paid out by a bank on a forged indorsement of his check, may maintain an action therefor against the bank instead of following the money and recovering it from the one who had wrongfully received it; hence, one who intervenes on the ground that judgment against such bank may create a liability on his part, cannot have the action transferred to the county of his residence, on account of being the real party in interest.

**Timely Objection:** MOTION FOR NEW TRIAL.   An objection that the jury were not allowed to take to their room certain letters used in evidence cannot be raised for the first time on motion for new trial.

*Appeal from Scott District Court.*—Hon. Charles M Waterman, Judge.

### Friday, April 9, 1897.

The undisputed facts in this case are that the plaintiff bank and the defendant, the Citizens National Bank, are both situated in the city of Davenport, Iowa.   Both have for many years been conducting

a banking business in the same building in that city. The two banks have a separate and independent corporate existence, though to some extent the stockholders in both institutions are the same, and a majority of the directors of the plaintiff bank are also directors in said Citizens National Bank. The business of each bank is conducted independently of the other. About February 15, 1893, one John McLaughlin, a resident of the city of Clinton, in Clinton county, Iowa, claiming to represent one William Quinlan, his brother-in-law, also of said Clinton county, and residing some thirty miles northwest from the city of Clinton, applied to the plaintiff bank for a loan of eight thousand dollars on the farm of said Quinlan, upon which the latter was living. He was furnished by the plaintiff bank with a blank application for a loan, a blank mortgage and note. In due time, McLaughlin caused to be returned to said bank the application properly filled out, and purporting to be signed by said Quinlan; also, the mortgage properly filled out, and purporting to be signed by Quinlan and his wife, and to have been duly acknowledged by them before a notary public; also, the note filled out, and purporting to be signed by said Quinlan. A mistake had been made in the mortgage, and the bank furnished McLaughlin with another blank, with the request that he have it signed and acknowledged by Quinlan and his wife, and also have it duly recorded. When the plaintiff bank received from McLaughlin the first mortgage, and at the time it sent him the other blank, it drew its check for the eight thousand dollars, the amount of the loan, payable to William Quinlan, and mailed the same to McLaughlin at Clinton, Iowa, and in the letter of transmittal directed McLaughlin that the check should not be used until the new mortgage was executed, acknowledged, and recorded. The check for the eight thousand dollars

was dated February 18, 1893, and was presented to the intervener bank for payment by McLaughlin on the twenty-first day of said month. The new mortgage bore date February 20, 1893, and purported to have been acknowledged and recorded on the same day. It reached the plaintiff on February 21, 1893. The check was presented to intervener bank by McLaughlin on February 21, 1893. On the back of it there appeared the name "William Quinlan." It was also indorsed by McLaughlin. McLaughlin asked for the cash on said check. Before cashing the said check, the cashier of the intervener bank called up the plaintiff bank by telephone, and certain communications were thus had between the two banks relating to the check, as to which there is a conflict in the evidence. After the conversation had ended, the intervener bank cashed the check, and the same day indorsed it for collection, and transmitted it to its Davenport Correspondent, the defendant the Citizens National Bank. The latter bank had on deposit money of the plaintiff bank in a sum in excess of the amount called for by the check, and charged the eight thousand dollars up against the plaintiff's said deposit account. Nothing further was done in the matter until about February, 1894, when the plaintiff bank sent a notice to Quinlan that the interest on his eight thousand dollar note and mortgage would soon be due. Quinlan denied signing the application, note, or mortgage, and denied having authorized McLaughlin to act for him in procuring a loan; whereupon it became known that the note, mortgage, appraisement, certificate of acknowledgement, and certificate of recording, and the indorsement upon the check of William Quinlan's name, were all forgeries. In November, 1893, and a short time before the first interest payment became due, McLaughlin suicided and died, insolvent. It appears that neither plaintiff's officers, nor

the officers of the Citizens National Bank, nor the officers of the intervener bank, had ever seen Quinlan. May 22, 1894, plaintiff filed its petition in the district court of Scott county, Iowa, claiming that the defendant the Citizens National Bank had without authority appropriated to its own use, out of the money plaintiff had deposited with it, the sum of eight thousand dollars on February 21, 1893, and refused to pay the said sum over to plaintiff. Judgment was asked for said sum, with interest thereon from said date of appropriation. Thereafter, the defendant the Citizens National Bank gave notice to the City National Bank of Clinton, Iowa, of said suit, and of the facts claimed by plaintiff, and that said Citizens National Bank would hold said City National Bank responsible for any judgment which might be obtained against it, and that it should come in and defend for it, in said suit; whereupon the City National Bank employed counsel to defend the said Citizens National Bank in said suit. August 6, 1894, said counsel filed an answer for said Citizens National Bank, which was in substance a general denial. September 6, 1894, said counsel filed an answer for said bank, pleading five separate defenses. These are lengthy, and may be summarized as follows: (1) That the City National Bank paid the check as an accommodation to plaintiff, and to the defendant, upon the statement and representation of plaintiff that it had issued such a check on a loan made to William Quinlan, and plaintiff was therefore estopped from denying that it had such a transaction with Quinlan, and from claiming that the check was wrongfully cashed or paid. (2) Pleaded the same facts, and alleged that in the transaction McLaughlin was the agent of the plaintiff, and set forth the facts claimed to constitute such agency. (3) Embraced all prior allegations, and alleged that the facts pleaded showed

that the plaintiff was negligent in not informing the City Bank that it had dealt with McLaughlin, instead of Quinlan, and that it had dealt solely with McLaughlin, and had never seen Quinlan, and that it had suspicions of McLaughlin, and declined to trust him, and therefore made its check payable to Quinlan. (4) This defense is not now insisted upon. (5) In this defense it is claimed that the City Bank inquired of the plaintiff for general information with regard to the check, and asked whether it should pay the check, and that plaintiff was negligent in not imparting to it full information touching the check. It is pleaded in each defense that the City Bank paid the check upon the direction of the plaintiff. April 23, 1895, the defendant, the City National Bank of Clinton, intervened in said action, and pleaded substantially the same matters as have been referred to as having been pleaded by the Citizens National Bank. On the same day the Citizens National Bank filed an amendment to its answer, alleging that it acted in good faith in paying the eight thousand dollars to the City National Bank, and without knowledge of any forgery or fraud. The plaintiff answered the petition of intervention, putting in issue all of the facts therein pleaded, and averred that the pretended indorsement of the name of William Quinlan on said check was a forgery, and made without his knowledge or consent, and that said Quinlan never received any part of the consideration for said check or of the money paid thereon. The cause was tried to the court and a jury, and a verdict returned for the full amount claimed, upon which a judgment was entered against the defendant the Citizens National Bank. The defendant the Citizens National Bank and the intervener appeal.—*Affirmed.*

*L. A. Ellis* and *Davison & Lane* for appellants.

*Julius Lischer* and *Bills & Hass* for appellee.

KINNE, C. J.—I.   After the City National Bank had intervened in this action, it filed a motion for the removal of the cause to Clinton county, the place of residence of said intervener.   This application for a change of the place of trial was made under section 2586 of the Code, which provides for the bringing of personal actions in a county wherein some of the defendants actually reside. Intervener's thought is that it is the real party in interest, and that the defendant, the Citizens National Bank is a nominal party, only, and made a party solely for the purpose of giving the district court of Scott county jurisdiction of the action.   The motion was overruled, and error is assigned thereon.   We think the ruling was correct.

Counsel for appellants rely upon several cases, which may be briefly considered.  *Howell v. Furnace Co.*, 69 Cal. 153 (10 Pac. Rep. 390), was a case where the company, claiming a residence in San Francisco, held two thousand dollars, to which it made no claim. Howell, the plaintiff, lived in Santa Barbara county, and brought his action there against the furnace company, claiming the money.   In accordance with the provisions of the statute of California, the furnace company paid the money into court, and procured one Thompson, the claimant of it, to be substituted as sole defendant in the case.   After Thompson had thus become the only defendant, he moved to transfer the case to San Francisco, the place of his residence.   It was held that the lower court erred in not sustaining the motion.   In the opinion, stress is laid upon the fact that Thompson did not voluntarily place himself under the provisions of the statute, and the fact that

he was the only defendant in the case. *Buell v. Dodge*, 57 Cal. 645, was a case where two parties were made defendants, but the complaint stated a cause of action against only one of them, and it was held he was entitled to a change of venue to his own county. *Mill Co. v. Bowen*, 7 Iowa, 465, is also relied upon. In that case the holding was that the defendants spoken of in the statute must be persons having an actual, real and positive interest in the cause, and not those who consent to be made use of to defraud the real parties.

None of these cases are applicable to the facts in the case at bar. If the action was rightfully brought, in the first instance, against the Citizens National Bank, and if it was liable to the plaintiff upon the cause of action stated in the petition, then the district court of Scott county had jurisdiction, and its right to hear and determine the cause could not be taken away because thereafter the intervener became a party to the suit, and might ultimately be required to reimburse the Citizens National Bank for money paid by it on the check. Was plaintiff's action properly brought against the Citizens National Bank? Plaintiff's claim was that said bank had converted its money, and refused to pay it over. Plaintiff was not required to follow the money, which said defendant had improperly paid out on forged indorsement of plaintiff's check, and recover it from some one who had thus wrongfully received it. We think it clear that plaintiff's remedy was properly sought against the bank which had, without warrant therefor, paid out the money. It cannot be doubted that, when plaintiff deposited its eight thousand dollars with the Citizens National Bank, it parted with the ownership of its money, and said Citizens Bank became plaintiff's debtor to that amount. *Independent District of Boyer v. King*, 80 Iowa, 497 (45 N. W.

Rep. 908). Therefore, in paying said eight thousand dollars to intervener, upon the faith of a forged indorsement, it paid its own money. Such being the fact, plaintiff would have no cause of action against the intervener. In *Bank of British North America v. Merchants Natl. Bank of City of New York*, 91 N. Y. 106, wherein the facts were similar to those in the case at bar, the court said: "The defendant was bound to see to it at its peril that the indorsement of Mrs. Halpin (the payee of the check) was genuine; that it paid the check to one entitled to the payment thereof; and that it got good title to the check as a voucher, and the loss, as between it and the plaintiff [the drawer of the check], for wrongful payment, must fall upon it." The same question was presented in the case of *Corn Exch. Bank v. Nassau Bank*, 91 N. Y. 74. It appeared in that case that Kunhardt & Co. deposited money in the Corn Exchange Bank. They drew a check for nineteen thousand dollars to the order of William Ives and John Waters. The Nassau Bank cashed the check on a forged indorsement of the names of the payees, and the Corn Exchange Bank paid it to the Nassau Bank. Kunhardt & Co. sued the Corn Exchange Bank for their deposit. That bank notified the Nassau bank, as was done in this case by the Citizens National Bank, to intervener. The plaintiffs recovered against the Corn Exchange Bank. Thereafter, the latter brought suit against the Nassau Bank to recover the money it had paid on the forged check. It was held in that case that there was no privity between Kunhardt & Co. and the Nassau Bank; that the money received by it was not their money, and that it was not liable to them. It was said that "their money was still on deposit with the plaintiff, and the plaintiff owed them for it." These cases show that the Citizens National Bank was properly sued by plaintiff. No action was brought against intervener,

no recovery was sought from it, and it did not occupy such a position as to entitle it to be substituted for the original defendant. Suppose the plaintiff had made the intervener a party defendant with the Citizens National Bank, could intervener have demanded a change of place of trial to the place of its residence? We think not. Certain it is intervener can have no greater rights in that respect than it would have had in the supposed case. Having stated a good cause of action against the defendant, plaintiff was entitled to a trial in Scott county, as against such defendant, regardless of the intervention of the City National Bank of Clinton.

II. After the court had overruled the application for a change of the place of trial heretofore mentioned, the intervener answered, setting out substantially the same defenses as had been pleaded by the defendant, the Citizens National Bank; whereupon the intervener made an application for a change of the place of trial, upon the ground of local prejudice, under section 2590 of the Code. It may be, if this application and the showing made in its support had been made in time, that it should have been granted. But the statute requires such an application to be made before a continuance of the case has been had, and it is not allowed after such continuance except for a cause or causes not known to the affiant before such continuance. Code, section 2591. This application was made after the case had been three times continued, and it does not appear that the causes for the application were not fully known to affiants long prior to such continuances. For this reason the application was properly overruled.

III. It is said that the court erred in not submitting all the issues to the jury; that other issues, as to which it is claimed there was evidence, were material; and that the jury should have been instructed as to

them. The answers of the defendant and of the intervener presented substantially the following defenses: (1) That plaintiff bank reported to defendant bank that it had made a loan to Quinlan, and was therefore estopped from denying that the check had been wrongfully paid; (2) that McLaughlin, in the loan transaction, acted as plaintiff's agent; (3) that plaintiff was negligent in not informing intervener that it had dealt only with McLaughlin; (4) that plaintiff was negligent in not informing intervener fully touching the check. In each division of the answer it is alleged that intervener paid the check upon the direction of the plaintiff. The evidence on part of the defendant and intervener tended to show that plaintiff said it had made a loan to Quinlan. They then supposed that they had made such a loan. Because it appears thereafter that McLaughlin forged the application, the mortgage, the acknowledgement, and the recorder's certificate, does not estop plaintiff from now seeking to recover its deposit with the defendant. The case is not different from what it would be had Quinlan actually negotiated the loan for himself, and McLaughlin had improperly obtained the check. and forged Quinlan's name, and drawn the money thereon, as he in fact did.

It is said that McLaughlin was acting as the agent of plaintiff, and it is responsible for his act in forging Quinlan's name on the check. If it should be conceded that McLaughlin was so acting as plaintiff's agent, he could not bind his principal by making a forged indorsement on the check of the payees named. See *Welsh v. Bank*, 73 N. Y. 424. In the case of *Citizens National Bank of Davenport v. Importers and Traders Bank of New York*, 119 N. Y. 195 (23 N. E. Rep. 540), the forgery was committed by the bookkeeper of the payees named in the drafts. The payees, Wadsworth & Co., bought drafts

from the plaintiff bank to remit to their creditors in payment of amounts due the latter. They indorsed the drafts, and delivered them to their bookkeeper, to be mailed to the proper parties. He erased the indorsements, forged others, and used the paper for his own purposes. The court said: "In the first place, we must regard the paper as never having been paid by defendant to the order of the plaintiff, for the rule is well and long established that a forged indorsement does not pass a title to commercial paper, negotiable only by indorsement; and payment by the drawee, although in good faith, of a draft so affected, is no payment at all as to the true owners. *Graves v. Bank*, 17 N. Y. 205. It was the defendant's business to see to it that its depositor's moneys were expended according to its directions, and every expenditure was at the defendant's risk of the direction being valid, and of the indorsement conveying title to the holder being genuine." The case of *Weisser v. Denison*, 10 N. Y. 68, was, like the one at the bar, brought to recover a deposit claimed to have been paid out on forged checks. The forgery was committed by the confidential clerk of the depositor. The case was decided in favor of the plaintiff. This last case was followed and approved in *Welsh v. Bank*, 73 N. Y. 424.

Nor is the claim well founded that the plaintiff was negligent. In the light of the authorities, there was no negligence on part of plaintiff. True, plaintiff did not discover the forgery for nearly a year after it had been accomplished. The check was returned with an apparent genuine indorsement of Quinlan. The fact that intervener had paid the money thereon, and presumably had satisfied itself that the indorsement of Quinlan was genuine, as it was in duty bound to do, was a further reason why plaintiff should not, in the absence of knowledge to the contrary, have concerned itself as to the genuineness

of the indorsement of Quinlan's name thereon. Furthermore, the plaintiff owed no duty to the defendant, or to the intervener, as to the genuineness of the indorsement of Quinlan. This same contention was made in *Welsh v. Bank, supra*, wherein the court held that a depositor owes no duty to a bank which requires him to examine his pass book or vouchers vith a view to a detection of forgeries of his name. "Whatever loss the bank has sustained it has suffered from its own negligence or want of skill in a matter in which, in the first instance, it, and it only, was bound to exercise care and diligence. To this loss no act of Weisser has contributed. He was guilty of no bad faith. He has violated no duty which he owed to the bank, and is in no way responsible. He had a right to assume that the bank had discharged its own duty to itself, and was not bound to conceive it possible that the bank had charged him with money which had not been paid upon his order. He was under no contract to examine with diligence his returned checks and bank book." See, also, *Bank v. Rossing*, 95 Iowa, 1 (63 N. W. Rep. 351).

Counsel for appellants cite many cases which are claimed to support the theory that plaintiff was guilty of such negligence as should preclude it from recovery. *Coggill v. Bank*, 1 N. Y. 113, was a case where the drawer of a bill forged the indorsement of the payee, and procured the money on it from a bank, and the drawee accepted and paid the bill to the bank; and it was held that he could not, because of the forgery, recover the money back from the bank; that the bank acquired good title to the paper from the drawer, he having negotiated it. *Meacher v. Fort*, 30 Am. Dec. 364, is a like case. Such a bill is treated as drawn in favor of a fictitious person. Cases are cited where it is held that if the payee or drawer's conduct has been such as is calculated to mislead the bank

which cashed the check, or has prevented it from making the usual scrutiny against fraud, it would be such negligence as should prevent a recovery. *Rouvant v. Bank*, 63 Tex. 610; *Bank v. Bangs*, 106 Mass. 444; *De Feriet v. Bank*, 23 La. Ann. 310; Daniel, Neg. Inst., section 1657. An examination of these cases shows that they are not authority in support of appellants' contention in this case, under the facts disclosed in this record. The evidence fails to show that there was any negligence on the part of the plaintiff. The court was not bound to submit to the jury matters which, if established, would constitute no legal defense to a recovery, or as to which there was no evidence. We think there was no error in the respect complained of.

IV. Before the City Bank paid the check, its cashier had a telephonic communication with a representative of plaintiff's bank in relation to said check. Intervener claims that in that conversation, and after being advised that McLaughlin was at its bank with a check for eight thousand dollars, in favor of William Quinlan, whom McLaughlin said plaintiff had made a loan to, plaintiff said it had issued such a check, and had made such a loan, that it said: "The check is all right;" that intervener said: "Shall we cash it? Will it be all right if we do?" that the reply was: "It will be all right to cash it." Mr. Lischer, who represented plaintiff at the Davenport end of the telephone line, states the conversation somewhat differently from intervener's cashier. He says he said his bank had issued such a check of eight thousand dollars, in favor of William Quinlan, and that "the check is all right."

Now, the court instructed the jury that the burden of proof was on the defendant, and, in order to defeat plaintiff's claim, it must establish, by a preponderance of the evidence, that the payment of said

check by the City National Bank to McLaughlin was rightful, and justified by law; that the only question they should determine was whether the plaintiff, in the conversation over the telephone, authorized the City Bank to pay said check, in the condition it then was, to McLaughlin. He also told them that ordinarily it is the duty of a bank to whom a check payable to order is presented for payment to ascertain at its peril the title of the person presenting it, and his right to receive the money thereon, and that, if such title purported to come through an indorsement, the bank to whom the check is presented for payment must at its peril know that such indorsement is genuine before it will be protected in advancing money on such paper; that such rule must prevail in this case, unless they found that the City Bank was induced to advance its money on the check by some act or declaration of the plaintiff, which act or declaration was reasonably calculated to, and did, cause the City Bank to advance the money, without informing itself of the title or right of the person presenting the check. Touching this telephonic conversation, he further instructed the jury that ordinarily any inquiry in relation to the check by the intervener, propounded to the plaintiff, could properly be construed by the latter as relating only to the validity of its signature, and whether it had funds to meet said check, and that nothing more than this information would be understood as being sought, unless specially and plainly asked, and that, after determining what the conversation through the telephone was, they should ascertain and find, in the light of all the surrounding circumstances, whether the City National Bank sought to learn from plaintiff if it (the City National Bank) might safely pay said check without investigation or inquiry as to McLaughlin's title thereto or the genuineness of Quinlan's name upon the back, and also

whether the plaintiff bank, knowing what the City Bank sought, so responded as to reasonably induce said City Bank to believe that it was authorized' so to do; that, if the City Bank paid the check without being misled by the plaintiff, they must find for the plaintiff. If, however the City Bank was induced to make the payment to McLaughlin without investigation on its part, by reason of plaintiff's response, then it would not be liable.

The above is a summary of the instructions given touching this matter. That they were correct we have no doubt, and that they embodied the only real defense pleaded which was legally, under the evidence, available to the defendant and intervener, we think is clear. These instructions were evidently based upon the holding in *Espy v. Bank*, 18 Wall. 604. Without quoting from that case, which is a leading one, we may say that it fully sustains the law as laid down in the instructions of the trial court in this case. As supporting the same doctrine, see *Marine National Bank v. National City Bank*, 59 N. Y. 67; *White v. Bank*, 64 N. Y. 316; *Clews v. Bank*, 89 N. Y. 418.

V. Complaint is made of an instruction of the court to the effect that, if the jury found for the plaintiff, they should include in their verdict, interest on the amount of the check from the time the check was paid. There was no error in this division of the charge. While it appears that the plaintiff did not receive interest on its deposit account with the Citizens National Bank, still, when said account was reduced by the payment of this check, plaintiff was compelled to supply its place with a like sum of money, in order to keep its deposit intact. Therefore it was deprived of the use of the money so wrongfully paid out. That interest is recoverable in such a case, see *Corn Exchange Bank v.*

*Nassau Bank*, 91 N. Y. 74; 3 Parsons, Cont., page 102. And see also, as bearing upon the question of the right to recover interest on money held by one and belonging to another, *Hubenthal v. Kennedy*, 76 Iowa, 707 (39 N. W. Rep. 694); *Risser v. Rathburn*, 71 Iowa, 113 (32 N. W. Rep. 198); *Goodnow v. Litchfield*, 63 Iowa, 275 (19 N. W. Rep. 226); *Mansfield v. Wilkerson*, 26 Iowa, 482.

VI. Error is assigned upon the court's refusal to give certain instructions asked by appellants. They were intended to present the defendant and intervener's theory of the case. In so far as they were proper, the thought contained in them was embodied in the instructions given by the court. As framed, they were objectionable, for reasons already stated.

VII. Error is assigned upon the action of the court in refusing to submit twelve special interrogatories to the jury. We cannot set them out, as they cover two pages in print. As to these interrogatories, it may be said that if submitted to the jury, and answered favorably to defendant and intervener, they could not, in view of the evidence, have controlled the general verdict; hence it was not error to refuse to submit them. *Dreher v. Railway Co.*, 59 Iowa, 601 (13 N. W. Rep. 754); *Scagel v. Railway Co.*, 83 Iowa, 380 (49 N. W. Rep. 990). They were also properly refused, because not calling for a finding of fact necessarily determinative of the case. *Hawley v. Railway Co.*, 71 Iowa, 717 (29 N. W. Rep. 787).

VIII. Defendant and intervener sought to show by the witness Smith, who conversed over the telephone with plaintiff's representative, Lischer, what he (Smith) repeated to one Stone as the answers he received from Lischer. The evidence was rejected. We are cited to no authority in support of the appellant's claim that such evidence

is admissible, and we know of no rule which would warrant its admission.

IX.   After the jury had been out about twenty-two hours, they were called into the court room during a session of the court, and asked if they were unable to agree on account of any misunderstanding of the law of the case; and the foreman said that they understood the law and the facts, and were unable to agree, whereupon the court said to them, orally: "This case is submitted to you for decision, and not for disagreement.  I think I will let you give it a further trial."   It is contended that this statement was error.   Counsel's thought seems to be that the language used was calculated to coerce the jury into agreeing upon a verdict.   In *Niles v. Sprague*, 13 Iowa, 203, the jury was told "that it was important they should agree, if they could satisfy their minds as to the right of the case between the parties."   It was held not error.   In *Frandsen v. Railway Co.*, 36 Iowa, 372, it was held not error to instruct a jury which has failed to agree that it is the duty of each juror to lay aside all pride of opinion, and carefully review the ground of his opinion, and to direct them to return to their room, and examine their differences in a spirit of fairness.   In *Giese v. Schultz*, 69 Wis. 521 (34 N. W. Rep. 913), the court said to the jury:  "I cannot discharge you now. It is your duty to use every reasonable effort to come to an agreement."   It was held not error.   In *Jackson v. State* (Wis.) 64 N. W. Rep. 838, the court said: "It is your duty to agree upon a verdict if that is possible."   Held not error.   In *Odette v. State* (Wis.) 62 N.  W.  Rep.   1054, it is held that the court must have a broad discretion in such matters.   The cases where directions to a jury touching an agreement have been held error have been where the language used has been such as indicated

an intention of coercing the jury into an agreement, or where the remarks of the trial judge were such as to impress the jury with the belief that the judge wanted the case decided in favor of a particular party to the suit. *Railway Co. v. McCue* (Tex. Civ. App.) 35 S. W. Rep. 1080; *Mahoney v. Railway Co.* (Cal.) 42 Pac. Rep. 968. The language used by the trial judge in the case at bar was proper. The statement that the case was submitted to them for a decision was a statement of a fact, which, as jurors, they should have known in the absence of admonition to that effect by the court. The last part of the court's statement indicated simply that he thought the jury should make further efforts to agree. There was no suggestion that he would keep them together until they did agree. The end to be attained by a jury trial is a verdict, and it is desirable, from every point of view, that jurors agree, so that litigants may not be put to the annoyance and expense of more than one trial. Much discretion must be vested in the trial judge in such matters, and, unless such discretion is abused, we should not interfere. In this case there was no impropriety in what the court said.

X. It is said that the court erred in refusing to let the jury take to their room certain letters which had been introduced in evidence. The record fails to show that appellants, when the jury retired, requested that they take the letters, and that the court refused such a request, and that an exception was taken to such a ruling. The question appears to have been raised for the first time in the motion to set aside the verdict, and for a new trial. It was too late. *Shields v. Guffey*, 9 Iowa, 322; *Turner v. Kelley*, 10 Iowa, 573. We have considered all of the questions argued. We discover no error in the rulings and holdings complained of, and the judgment of the district court is AFFIRMED.